WINKLEMAN v. WINKLEMAN *et al.*

1. **Practice:** FILING: PLEADINGS: ENTRY IN APPEARANCE DOCKET. A pleading is not filed so as to authorize its consideration as a part of the record, unless a memorandum of its filing is entered in the appearance docket. (See *Nickson v. Blair*, 59 Iowa, 531.)

2. ———: ———: ———: TRANSFER FROM PROBATE TO EQUITY DOCKET: OBJECTION TOO LATE ON APPEAL. Where a cause was begun in probate in the circuit court, and the pleadings were properly filed, and a memorandum thereof was entered in the probate appearance docket, and the cause was then transferred to the equity docket, and came into the district court by operation of law

| | |
|---|---|
| 79 | 319 |
| 87 | 330 |
| 79 | 319 |
| 103 | 104 |
| 79 | 319 |
| f111 | 364 |
| 79 | 319 |
| o123 | 550 |
| 79 | 319 |
| 127 | 137 |
| 79 | 319 |
| 131 | 527 |

upon the abolition of the circuit court, *held* that it was not neces-
sary to refile the pleadings, and to enter a memorandum thereof
in the appearance docket of the district court; moreover, that the
question of the sufficiency of such filing could not be raised for the
first time in this court.

3.  **Homestead:** CONVEYANCE: ORAL AGREEMENT FOLLOWED BY
CHANGE OF POSSESSION: RESCISSION. Where a father, with the
consent of his wife, orally, and for a valuable consideration, gave
to his son a tract of land which included the homestead, and the
son took possession thereof and for a long time treated it in all
respects as his own, and the transfer was regarded by all con-
cerned as a completed transaction, except as to the legal title,
which it was designed to perfect by means of the father's will,
and a will was executed for that purpose, but after the son's
death the father, by a codicil, revoked that part of his will, *held*
that the equitable title was in the widow and heirs of the son, as
against the executor of the father, who sought to sell it and to
divide the proceeds under the terms of the codicil. (As to the
transfer of the homestead by verbal agreement, compare *Drake
v. Painter*, 77 Iowa, 731.)

*Appeal from Mahaska District Court.*—HON. J. K.
JOHNSON, Judge.

FILED, FEBRUARY 4, 1890.

ACTION in equity for the adjudication of title to
real estate.   The facts are stated in the opinion.

*John F. Lacey* and *W. R. Lacey*, for appellant.

*Blanchard & Preston*, for appellees.

ROBINSON, J.—This action was originally a pro-
ceeding in probate to obtain an order for the sale of real
estate.   In August, 1886, the plaintiff, as executor of
the estate of John Winkleman, Sr., deceased, filed in
the proper court a petition which alleged the death of
said Winkleman, testate, and that his will, which had
been admitted to probate, directed the sale of the prop-
erty described in the petition, and the distribution of
the proceeds among his heirs.   The property described
comprises two tracts of land, which contain in the
aggregate about fifty-one acres.   Notice of the proceed-
ing was given to William A., Thomas A., Thomas J.,
H. C., B. F. and Samuel Winkleman.   The four
defendants last named and the plaintiff are the sons,

and the two defendants first named are the grandsons, of said John Winkleman, Sr. The grandsons are minors, and appear by guardian. On the seventh day of September, 1886, they filed an answer and cross-petition. In that they allege that they are the sons of John S. Winkleman, who was a son of their said grandfather, and is now deceased. They further allege in their original cross-petition, and amendments thereto, that they are the only heirs of their father; that he furnished a large portion of the money paid for the land in controversy; that he lived on and cultivated and improved it until his death; that he helped to farm other lands which belonged to his father, and helped to care for and support his father and his father's family until his own death; that in consideration of the money paid, and the labor and support furnished, as aforesaid, it was agreed between their father and grandfather that the latter should, by will or other means, transfer to their father the title to the premises in controversy; that, in pursuance of said agreement, their grandfather, at some time in the year 1874, did, by gift verbally expressed, transfer and convey to their father the premises in controversy, with the intent to vest him with the full title thereto; that their father accepted said transfer, and at once took possession of the property so transferred, with the knowledge and consent of his father, and caused the same to be staked off, and from that time occupied it until his death, and, with the knowledge of his father, made valuable improvements upon it, and paid the taxes thereon, leased it to other parties, and in all respects treated it as his own; that their grandfather, in furtherance of his said agreement, made a will, dated December 24, 1874, by which he devised said premises to their father; that their father died in the year 1877; and that thereafter their grandfather, being improperly influenced thereto, attempted to revoke said devise by means of a codicil, and devise said property to his other children. They ask that they may be decreed to own the property.

Winkleman v. Winkleman.

Their mother, the widow of John S. Winkleman, filed a petition of intervention, in which she repeats substantially the averments of the cross-petition of her sons and asks that she and they be decreed to be the owners of the property in controversy. She is insane, and appears by guardian. A trial was had on the merits of the case, and a decree rendered in favor of the widow and sons of John S. Winkleman, deceased, adjudging them to be the absolute and unqualified owners of the property in controversy. The plaintiff and his brothers appeal.

I.   After the arguments on the first appeal had been made, appellants applied to the district court for a *nunc pro tunc* order, to the end that the records of that court might show that a pleading entitled, "Amended reply and answer to petition of intervention," was duly filed in that court. It was found by the court that the paper in question was placed with the files in the case some time in January, 1887, and that it was attached to the files of pleadings some time in that month, immediately preceding a paper which was filed the twelfth of that month; that it could not state whether it had ever been presented to the clerk for filing or not; that it was not marked "Filed,' by the clerk, and no memorandum of its filing had ever been entered in the appearance docket; that it was prepared at the office of one of the attorneys in the case, at a time when depositions were being taken. The order prayed for was denied, and the applicants for the order appeal. It is agreed that the appeals be submitted together. It was held in *Nickson v. Blair*, 59 Iowa, 531, that the failure of the clerk to make the required entry in the appearance docket was fatal, even though the paper had been lodged in his office, and marked "Filed." Following that rule, the action of the district court in overruling the motion must be held to have been correct. The paper had not been filed in fact, within the meaning of the law; and the records should not have been made to show that it had.

1. PRACTICE: filing pleadings: entry in appearance docket.

Winkleman v. Winkleman.

II. On the day they filed their cross-petition, defendants William A. and Thomas A. Winkleman filed a motion to transfer the cause to the equity docket. It was sustained on the tenth day of September, 1886; but no record of that order was made until the nineteenth day of January, 1887, when the proper record was made by means of a *nunc pro tunc* order. Some of the pleadings were filed as in probate, and a memorandum thereof was made in the probate appearance docket; and no entry thereof was thereafter made in the appearance docket of the district court. Appellants contend that such papers were not properly filed. The proceedings in probate were commenced in the circuit court, and while pending therein the filing of papers was properly noted in the probate appearance docket. The circuit court ceased to exist on the first day of January, 1887; and the district court succeeded to its jurisdiction, and was given authority over its records. We do not think it was necessary to refile papers which had once been properly filed, and memoranda of such filings duly made in the proper appearance docket. Moreover, the sufficiency of the filings now questioned by appellants is raised for the first time in this court. No objection was made to them, nor to the pleadings in question, in the district court; but they were treated in all respects as duly filed, and a part of the records in the case. In view of the fact that all had once been filed, and a record thereof made, appellants should not now be heard to question that they have been duly made of record.

III. The evidence submitted is voluminous and conflicting; but we are of the opinion that the facts of the case, either admitted or proven by a preponderance of the evidence, are substantially as follows: About the year 1855, John Winkleman, Sr., came to Iowa, and soon afterwards purchased the land in controversy, with other lands. His six sons, the youngest of whom was about sixteen years of age, came with him.

*Margin notes:*

2. ——:——: ——: transfer from probate to equity docket: objection too late on appeal.

3. HOMESTEAD: conveyance: oral agreement followed by change of possession: rescission.

All but one lived with him until they were married, but all but John S. left him within seven or eight years after they came to Iowa. John S. was about twenty-four years old when the land in question was purchased, and furnished nearly one hundred and twenty dollars towards its purchase. He lived on the farm with his father until his death, in 1877, and helped to carry it on. He married appellee Mary M. Winkleman in the year 1866, and by her had two sons, her co-appellees. In October, 1874, John Winkleman, Sr., assisted in platting certain land, including the land in controversy. The plat described this land as the property of John Winkleman, Jr., and was recorded. John S. was sometimes known as " John, Jr." He at once took possession of the property, and made substantial and permanent improvements thereon. After that time the property was treated as belonging to him. It was assessed in his name, with the knowledge and by the wish of his father; and he paid the taxes thereon in his own name from year to year. He was frequently declared to be the owner of the property by his father, and his brothers understood that it belonged to him. His father had divided a large portion of his property among his sons by way of advancements, and had given him but little. The land in question would have made him but a fair share of his father's estate. It was treated in all respects as belonging to him. On the twenty-fourth day of December, 1874, his father executed a will which devised to him this land. After his death, trouble arose between his father and the administratrix of his estate and the guardian of his children and litigation ensued. After that trouble, and in November, 1879, John Winkleman, Sr., executed a codicil which in terms revoked so much of his former will as devised the property in question to John S., and directed that it be sold, and the proceeds be divided among his five sons, excepting ten dollars, which was to be divided between John S.'s children. It is insisted by appellant that the evidence shows at most but an

intent on the part of their father to devise the land to their brother; and that nothing he said or did had any contractual effect. There is much in the record to sustain that claim; but, taken as a whole, the evidence satisfies us that the father in fact transferred the land to his son; that the transfer was accepted, and in all respects treated as completed, excepting as to the legal title; and that it was designed to perfect that by means of the will. It appears to us that no other conclusion would be equitable.

IV. It is insisted that the land in question was the homestead of John Winkleman, Sr., and that it was not, and could not have been, alienated, for the reason that no joint instrument, concurred in and signed by himself and wife, was executed, as required by section 1990 of the Code. As the record now stands that defense is not pleaded. It was set up in the paper which appellants attempted unsuccessfully to have made a part of the record. It is contended that the want of a valid conveyance may be shown under the general issue. If it be conceded, for the purposes of this appeal, that such is the case, still we think the appellants should fail. The evidence in regard to the homestead character of the premises is not clear. The homestead right could not in any event have attached to all of both tracts. No effort to show that they included a homestead seems to have been made in the court below. The evidence as to that seems to have been incidental, and we are satisfied that the defense now urged was not relied upon in the court below. Moreover, the evidence shows that both parents of John S. knew of, and consented to, the transfer. If their homestead was included, they abandoned it. Both parents survived the son, but that fact gave them no right to rescind a transfer which had taken effect during the lifetime of the son. If their homestead was included in the premises in controversy, the case is in some respect like that of *Drake v. Painter*, 77 Iowa, 731; in which it was held that a verbal agreement for

the transfer of the homestead, assented to by both
husband and wife, followed by a change of possession
and a performance of the agreement, operated to trans-
fer the equitable title. The decree of the district court
involved in the first appeal, and its ruling involved in
the second, are                                    AFFIRMED.