JOHANNA BRANDES, V. WILLIAM C. BRANDES, HENRY
    BRANDES, LOUISE BUCHOLZ, OTTO VOGEL and WILLIAM
    C. BRANDES as Administrator of the Estate of WILLIAM
    BRANDES, Deceased, Appellees, MINA HOYER, CONRAD
    HOYER, WILLIAM VOGEL, and EDWARD VOGEL, Appel-
    lants.

**Wills:** AGREEMENT TO DEVISE: DISTRIBUTIVE SHARE. Evidence that
1  a testator remarked to certain devisees that he would remem-
   ber them, but not indicating how or upon what consideration,
   is insufficient to show that a devise to them was pursuant to
   an agreement so as to have the widows share set apart from
   other property than that devised to them.

**Evidence:** AGREEMENT WITH DECEDENT. Where a widow was seek-
2  ing to have her distributive share in her deceased husband's
   estate set apart to her, a daughter was incompetent under
   Code Section 4604, to prove as against the widow that certain
   property devised to her was in consideration for services ren-
   dered decedent and his widow; and the fact that the widow
   subsequently testified to the same transaction did not affect
   the ruling excluding the incompetent evidence.

**Admeasurement of dower:** AGREEMENT TO DEVISE: EVIDENCE. In a
3  proceeding to have the widow's distributive share set apart,
   the evidence is reviewed and held sufficient to show an agree-
   ment between decedent and her daughter to devise to the latter
   certain property in consideration for services rendered de-
   cedent: and authorize a decree admeasuring the widow's
   dower from other property.

**Appeal:** ENTITLING CAUSE. Where an application for the admeas-
4  urement of dower was filed in probate, and therefore at law,
   the cause was properly entitled in the abstract as one at law.

*Appeal from Lee District Court.*— HON. H. BANK, JR.,
                        Judge.

MONDAY, JANUARY 15, 1906.

APPLICATION of the widow of William Brandes to have her distributive share in his estate set apart to her. Mina and Conrad Hoyer and William and Edward Vogel resisted as to certain lots, and in cross-petitions prayed for affirmative relief. The cross-petitions were dismissed, and admeasurement of dower ordered. The above-named cross-petitioners appeal.— *Reversed in part.*

*John L. Benbow,* for appellants.

*W. S. Hamilton,* for appellees Wm. C. Brandes and Wm. C. Brandes, as administrator of the estate of Wm. Brandes, deceased.

*Herminghausen & Herminghausen,* for appellee Johanna Brandes.

*H. C. Stempel,* for appellees Henry Brandes and Louise Bucholtz.

LADD, J.— Wm. Brandes died November 11, 1902, seised of lots Nos. 2 to 18, inclusive, in outlot 1135, in the city of Ft. Madison. On the 18th day of October preceding he had executed a will, by the terms of which he gave the use of his entire estate to his widow during her life, and upon her death lots 2, 17 and 18 to his son William; lots 3, 4, 5, and 16 to his son Henry; lots 6, 7, 8, and 9 to his daughter Mrs. Bucholtz; lots 10, 11, and 12 to his daughter Mrs. Hoyer; and a lot each to the latter's three sons by a former husband. The will was admitted to probate June 14, 1903, and William Brandes was appointed administrator with the will annexed. Two days later the widow declined to take under the will, and on March 27th of the same year filed her application in probate to have her distributive share of the estate set apart to her. To this defendants Mrs. Hoyer with her husband and sons interposed the plea that another action was pending in which the relief prayed should have

been sought, and that the administrator had asked that the land be sold to pay the debts of the estate, and also a motion to dismiss on these grounds; but, as no evidence whatever was offered or introduced in support of the plea or motion, the rulings denying the plea and overruling the motion demand no further attention.

The answer set up the contracts alleged in the cross-petitions by way of defense. William and Edward Vogel in their cross-petition alleged that the deceased, their grand-father, because of certain matters, had agreed to make provision for them in his will, and they prayed that the devise to them be adjudged to have been made in pursuance of said agreement, and that the widow's dower be set apart from the other lots. The evidence adduced in support of these allegations showed that the testator had merely remarked that he would remember them, but did not indicate how nor the particular consideration for which this should be done. It was entirely too indefinite to entitle them to the relief prayed.

1. WILLS: agreement to devise: distributive share.

Mrs. Hoyer alleged both in her answer and cross-petition that in the fall of 1902 the deceased and his wife, then residing in their home on lots 10 and 11, proposed to her that, if she would move there with her family and care for them in their old age, she should have said lots and also lot 12 after their death; that she accepted this proposition, and with her family moved on said premises on the 18th of October, 1902, and did everything required in the care of her father until his death; that thereafter her mother declined to eat at the table or accept the care stipulated for, though the cross-petitioner was ready, and so continues, to furnish same in performance of the contract, and she prayed that the widow be required to specifically perform the agreement, that she be held to be estopped from claiming lots 10, 11, and 12 as a part of her distributive share, and be required to take the same from other lots; that the above-

2. EVIDENCE: agreement with decedent.

named lots be decreed to belong to Mrs. Hoyer, with the reservation of the use to Mrs. Brandes so long as she shall live and free from the expenses of administration and the debts of the estate. The evidence leaves no doubt as to the homestead character of lots 10 and 11. As no evidence was offered or introduced tending to show any indebtedness existed on the part of deceased or to sustain the truth of the allegation that the administrator had begun an action to subject the property to the payment of debts, we have no occasion to determine whether the other lots formed a part of the homestead.

Was there such an agreement as alleged by Mrs. Hoyer? She so testified, and was corroborated by her husband and one of her sons. The competency of herself and husband to testify to any conversation with deceased, however, was challenged because of section 4604 of the Code, which prohibits a party to an action or husband of such party from being examined, " as a witness in regard to any personal transaction or communication between such witness and a person at the commencement of such examination deceased, insane or lunatic, against the executor, administrator, heir at law, next of kin, assignee, legatee, devisee or survivor of such deceased person, or the assignee or guardian of such insane person or lunatic. But this prohibition shall not extend to any transaction or communication as to which any such executor, administrator, heir at law, next of kin, assignee, legatee, devisee, survivor or guardian shall be examined on his own behalf, or as to which the testimony of such deceased or insane person or lunatic, shall be given in evidence." The court sustained the objection, but the evidence was received subject thereto. Appellant insist that it was obviated by the fact that deceased had performed the agreement, in so far as possible, by the execution of the will which had been accepted as performance by Mrs. Hoyer, and that the cross-petition demanding specific performance was leveled at his widow, Mrs. Brandes, only. But Mrs. Brandes was

within the class protected by the statute, and the testimony related to an understanding between deceased and Mrs. Hoyer upon which the decision of the issues in the case necessarily depended. Both must have agreed to the disposition of the homestead in order to bind either, and before it can be said the will was executed in performance of an agreement the existence of the agreement must be established. Whether deceased had undertaken to perform the agreement, if any there was, in no way affected the application of the statute, and the testimony was plainly within its prohibition.

It is next contended that Mrs. Brandes, by testifying concerning the conversation between Mrs. Hoyer and deceased, waived the protection of the statute. But, when the testimony was given, the witnesses were incompetent, and that objection was rightly sustained. That the widow subsequently testified concerning the same transaction did not affect the ruling previously made. *Canaday v. Johnson,* 40 Iowa, 587; *Wood v. Brolliar,* 40 Iowa, 591; *In re Estate of Edwards,* 58 Iowa, 431; *Burton v. Baldwin,* 61 Iowa, 283.

Independent of the testimony of Mrs. Hoyer and husband as to any personal communication with deceased, however, the record clearly shows that such an agreement as is 3. ADMEASURE-   alleged was entered into. Mrs. Brandes re-
MENT OF
DOWER: agree-  quested her daughter Mrs. Hoyer, with her
ment to devise:
evidence.      family, "to move down there to help take care of them in their old age, and because she was not able to take care of herself and father," and proposed that "they would have just one room, and that the furniture they had was to be distributed around." At another time, according to Mrs. Hoyer's account, "we were to move down there and take care of her because she was unable to do her own work," and, as the "rest of the children all had houses of their own, that we should come and stay and take care of her and father as long as they lived, and that we should have that as our own home." Thereafter, when Mrs. Hoyer

and family moved in the home, her mother said: "Well, I hope this will be the last time that you move, and you can thank me for having your father to make a will so that you get the home"— and added that Mrs. Hoyer was to get the home place, including the three lots. This was repeated on several occasions. On cross-examination Mrs. Hoyer stated that her father had said before she had moved in that "they would give us the house and two lots," and the question was asked, "your mother had nothing to do with that?" and she answered, "No, sir." What she doubtless intended was with this particular conversation, for she had testified to conversations with the mother in which the proposition was distinctly stated. It also appeared that Hoyer had gone for the notary to draw the will at Mrs. Brandes' request, and that she had conveyed the lots to her husband a few days before the will was executed for the express purpose of enabling him to dispose of them by will, in the manner indicated therein. William Vogel testified that he was present at the conversation first mentioned, and that deceased and his wife then said to Mrs. Hoyer that they wanted "Mr. and Mrs. Hoyer to move down there and take care of them, and that they were to have all they raised on the place, except a few lots that William was to have to plant vegetables on, and they was to support them as long as they lived, and after their death they were supposed to take the house in which they lived and three lots." He then gave, more in detail, the conversation. That his testimony was competent cannot be doubted, and, though his statement as to what Mrs. Hoyer was to have is not definite, it is susceptible to the interpretation that something was said on the subject. Mrs. Brandes testified in her own behalf, and, though she denied sending Hoyer for the notary, admitted that she deeded the lots to deceased, so that he could dispose of them by will as he did. She further testified that "the way Hoyers came to live there, we were both old and feeble, and thought if we got somebody to live there

for the rent, why, then, there would be somebody there to cultivate the land and pay the taxes and keep everything in order.   Q. What conversation did you have with Mrs. Hoyer about what they should have?   A. That they should have the house and three lots, but in the will there was nothing made as to that." On cross-examination she testified, " there was no talk about taking care of us," and intimated that they moved into the house upon their own suggestion.

No more of the details have been stated than seems necessary for an understanding of the situation.   We think that, aside from the testimony of Mrs. Hoyer and her husband to the conversation with the deceased, the proof fully establishes an agreement such as alleged in the cross-petition and the performance thereof by Mrs. Hoyer in so far as possible.   That the conversation with Mr. Brandes occurred as testified by Mrs. Hoyer and her husband the record leaves not a particle of doubt.   The only issue open to controversy is whether the deceased participated in the agreement.   Mrs. Hoyer and husband testified that he was present at the conversation between the former and her mother.   William Vogel testified that he participated therein.   This is not denied by Mrs. Brandes.   On the contrary, she admits that they, speaking of the Hoyers, " were to have the house and three lots."   In view of these circumstances, together with the execution of the will by deceased at her instance, as she declared giving Mrs. Hoyer the house and lots and the conveyance by Mrs. Brandes to the testator in order to enable him to do so, the only reasonable inference is that he was doing so in pursuance of the promise of himself and wife. As said, Mrs. Hoyer and family moved into the house and took possession of the premises in pursuance of the agreement, and cared for deceased and his wife for a time.   The contract is enforceable, even though the property constituted a homestead.   *Drake v. Painter,* 77 Iowa, 731; *Winkleman v. Winkleman,* 79 Iowa, 319; *Chew v. Holt,* 111 Iowa, 364. That Mrs. Hoyer and husband did not continue to care for

her mother was no fault of her own. About two weeks after she had taken possession her sister arrived, and immediately discovered to Mrs. Brandes the inequalities of the will, and from then on there was trouble, which terminated in the latter's refusal to receive the benefits of the agreement, and Mrs. Hoyer's removal from the place. That she had done what was required of her under the agreement is not questioned. That she has been ready and willing at all times to care for the plaintiff is conclusively established. We are of the opinion that Mrs. Hoyer was entitled to a decree protecting her right to the three lots under the provisions of the will, and that the widow's dower should be admeasured from the remaining lots.

II. The ruling on the motion to transfer to the equity side of the calendar was correct. *Johnston v. Robuck,* 104 Iowa, 523. The application for admeasurement of dower was filed in probate and was therefore at law.

4. APPEAL: entitling cause.

Entitling the cause in the abstract as at law, then, was correct, and the motion to dismiss on this account should be overruled. The grounds alleged in the motion to strike the abstract and affirm have been so frequently held to be without merit that no more is necessary than to say the motion is overruled.

On William and Edward Vogel's appeal, *affirmed;* on the appeal of Mina and Conrad Hoyer, *reversed.*