BLANCHE HATCHER et al., appellants, cross-appellees, v. MERLE
SAWYER et al., appellees, cross-appellants, LAVERNE HATCHER
et al., appellees, cross-appellees, G. G. EWING, special
administrator of estate of W. T. WADSWORTH, ap-
pellant, cross-appellee.

No. 47981.

(Reported in 52 N.W.2d 490)

APRIL 1, 1952.

REHEARING DENIED JUNE 13, 1952.

Bray, Carson & McCoy, of Oskaloosa, for appellants, cross-appellees.

Edwin Willcockson and F. M. Beatty, both of Sigourney, for appellees, cross-appellants.

WENNERSTRUM, J.—Plaintiffs in an action in equity sought specific performance of a claimed oral contract entered into between W. T. Wadsworth, now deceased, the father of plaintiffs, and his wife, their mother who predeceased him. It is claimed the father agreed with his wife to leave to the plaintiffs the property owned by him. They also sought judgment against the defendant Merle Sawyer in the amount of $4000 with interest at five per cent per annum from April 27, 1950, for money claimed to have been turned over by their father to said Sawyer after the claimed oral contract was made. They also asked for a writ of injunction enjoining the admission to probate of an instrument filed as the last will and testament of their father and which they claim is violative of the contract entered into by him with their mother. Merle Sawyer, a nephew of W. T. Wadsworth, and his son, Ronald Sawyer, were beneficiaries under the last will of the father, along with the two plaintiffs and the sons of the plaintiffs. Each beneficiary of this will was to receive a one-sixth share of the estate. The two Sawyers denied the making of the claimed oral contract and alleged that such a contract, if made, was contrary to law, public policy, void, without consideration, and was obtained by coercion and duress.

Merle Sawyer in an amendment to his answer alleged that he was the holder of a note in the principal amount of $1000 given to him by W. T. Wadsworth on November 15, 1941, and that he was entitled to have said note allowed as a claim against the estate. The trial court entered a decree wherein it established the contract sued on by the plaintiffs. It upheld the gift of $4000 made by Wadsworth to the defendant Merle Sawyer, found the $1000 note to Sawyer was a valid instrument and established it as a claim, enjoined the admission to probate of the instrument filed as the last will and testament of W. T. Wadsworth and directed the special administrator to pay to the defendant Merle Sawyer $1000 with interest at seven per cent per annum from the date of the death of W. T. Wadsworth. It fur-

ther directed the special administrator to pay one half of the remaining proceeds of the personal property to each of the plaintiffs and decreed them to be the owners of the real estate described in the petition. It also entered a judgment against the defendants Merle Sawyer and Ronald Sawyer for costs.

The plaintiffs, the two daughters, who were the beneficiaries under the claimed contract between W. T. Wadsworth and his wife, appealed from that part of the decree and judgment which denied the recovery of $4000 and interest from the defendant Merle Sawyer, and which decree also ordered the special administrator of the W. T. Wadsworth estate to pay to Merle Sawyer the sum of $1000 and interest. The two Sawyers have also appealed from the relief granted to the plaintiffs. The plaintiffs will be hereinafter referred to as the appellants and Merle Sawyer and Ronald Sawyer as cross-appellants.

W. T. Wadsworth and Nellie Wadsworth were husband and wife and were the parents of Blanche Hatcher and Hila Ewing, the plaintiffs in this action and the appellants in this appeal. They were the only children of the Wadsworths. Blanche Hatcher is married and has one son, LaVerne Hatcher. Hila Ewing is also married and has one son, Eugene Ewing. The two grandsons were made defendants in this action and are appellees herein. Merle Sawyer is a nephew of W. T. Wadsworth, deceased, his mother being a sister of Wadsworth. Ronald Sawyer is a son of Merle Sawyer.

Nellie Wadsworth died on January 6, 1949, and W. T. Wadsworth, her husband, died on April 27, 1950. Prior to the 30th of December, 1948, Nellie Wadsworth was the owner of a farm of one hundred acres situated in Mahaska County, Iowa, and was also the owner of a rent check in the amount of $600 and certain household furniture and other personal property. Prior to the last-named date W. T. Wadsworth was the owner of a residence property in Oskaloosa which was his home and that of his wife. He also had United States bonds, Series G, of the face value of $15,000 and which were payable to himself or to Mrs. Nellie Wadsworth. They also had a joint checking account in the amount of $3407.74. On or prior to December 28, 1948, Nellie Wadsworth had arranged for the preparation of a deed conveying the one hundred acres to her grandson Ed-

ward LaVerne Hatcher. This deed was subject to a life estate in William T. Wadsworth. It had been prepared in the office of an Oskaloosa attorney, but prior to that date had not been signed or delivered. On December 28, 1948, John S. Sproatt, the attorney previously referred to, was asked to come to the Wadsworth home, which he did, and he took with him the deed which had been prepared. This deed to LaVerne Hatcher was signed on the date mentioned by Mrs. Wadsworth, and she instructed Mr. Sproatt to keep it until he received further instructions. On December 30, 1948, the attorney was again called to the Wadsworth home and was directed to bring the deed with him.

The record discloses that during October 1948 Mrs. Wadsworth had become ill and that on the day following Thanksgiving, 1948, she had a stroke. Her doctor testified that in his opinion she was mentally and physically weakened by reason of her condition, that during the last ten days before her death she was more easily influenced, and also in his opinion, legally incompetent to carry on business transactions during that ten-day period. A witness who had been in the home during the last several months of Mrs. Wadsworth's life testified that there had been arguments between Mrs. Wadsworth and her husband relative to the disposition of their property. Another witness who was assisting at the home testified that on December 28, 1948, at the direction of Mrs. Wadsworth, she called John S. Sproatt, the attorney, and that he came to the home and brought with him a deed. She also testified that the grantee named in this deed was Edward LaVerne Hatcher, which deed was signed on that date by Mrs. Wadsworth. On December 30, 1948, according to the testimony of a Mrs. Spurgeon, she was told by Mrs. Wadsworth that she and her husband had reached an agreement and that she, Mrs. Wadsworth, would give the one hundred acres to her two grandsons, Eugene Ewing and LaVerne Hatcher, and that Mr. Wadsworth had agreed to take a life estate in the land, that he was not to take anything in addition to this life interest, and that Mr. Wadsworth was to leave the balance to their daughters.

On the occasion of the second visit of John S. Sproatt to the Wadsworth home on December 30, 1948, he was in Mrs. Wadsworth's room and Mr. Wadsworth was also present. Inquiry was made of the attorney if the deed could be torn up or the

name of William Eugene Ewing added to it. The attorney told her the name could be added and she requested him to do so. The attorney then returned to his office to change the deed as directed and then went back to the Wadsworth home with the changed deed which showed that it was made to William Eugene Ewing and Edward LaVerne Hatcher as grantees and that the husband, William Wadsworth, had a life estate. The record then shows that she stated that was the way she wanted it and she acknowledged the signing of the deed. After the signing of the deed and its acknowledgment she made a statement to her husband, as follows: "Now I have done my part, you do yours." The attorney testified that the husband nodded his assent. The deed was then handed to the attorney and he was told to deliver it to the two grandsons.

Shortly after the attorney returned to his office with the deed W. T. Wadsworth came into the office and stated that it was his desire to make a will so that his property would go to his two daughters, Hila Ewing and Blanche Hatcher, equally. A will to this effect was prepared and executed by W. T. Wadsworth who took the original will and left the law office. A carbon copy of it was retained by the attorney for his files. The deed was subsequently delivered to the grantees named.

There is other testimony substantiating the evidence heretofore referred to, which, for purposes of brevity, will not be here set forth. A carbon copy of the will which is in evidence executed by William T. Wadsworth on December 30, 1948, shows that the original will devised and bequeathed to the two daughters a one-half interest to each of them of all the property belonging to W. T. Wadsworth other than that necessary for the payment of his just debts and expenses of his last illness and burial.

It is shown by the record that on July 6, 1949, W. T. Wadsworth visited the law office of Edwin T. Willcockson, an attorney at Sigourney, and at that time Mr. Wadsworth executed a will wherein he left a one-sixth share of his property to each of the following: the appellants, Hila Ewing and Blanche Hatcher; his two grandsons, LaVerne Hatcher and Eugene Ewing; and the cross-appellants, Merle Sawyer and Ronald Sawyer. After the death of W. T. Wadsworth this last referred to will was filed for probate in the district court of Mahaska County.

Objections were filed by the appellants herein to the probate of this will and thereafter a special administrator was appointed. There is no evidence that the will prepared in the office of John S. Sproatt was ever found.

I. The burden of establishing a contract to will property to certain individuals, such as is claimed in this case, is on the party or parties so claiming and he or they must prove performance by the original contracting person or persons under whom claim is made. 68 C. J., Wills, section 220, page 598; In re Estate of Fetterman, 207 Iowa 252, 264, 222 N.W. 872.

If the contract is based on parol evidence the proof must be clear, satisfactory and convincing. In re Estate of Shinn, 207 Iowa 103, 105, 222 N.W. 569; Kisor v. Litzenberg, 203 Iowa 1183, 1187, 212 N.W. 343; In re Estate of Rich, 199 Iowa 902, 917, 200 N.W. 713; Ford v. Young, 225 Iowa 956, 962, 282 N.W. 324, and cases cited; Blezek v. Blezek, 226 Iowa 237, 241, 284 N.W. 180. Although the claimed contract in the present case was not in writing, we do have written evidence of it by reason of the deed by the wife and the copy of the will that was originally made by the husband. Besides these facts there is ample parol evidence that the contract was entered into between the parties.

We are convinced that the appellants, the two daughters, have met the requirements concerning proof of the alleged contract, and this proof has been, in our opinion, clear, convincing and satisfactory. We have not given consideration to their testimony, as it is claimed they are disqualified witnesses. We shall not discuss that question.

The statement made by this court in Powell v. McBlain, 222 Iowa 799, 804, 269 N.W. 883, 886, supports our conclusion that the trial court was right in concluding that there was a valid contract and that specific performance of the agreement should be required:

"It is to be remembered at this point that we are dealing with an executed contract. That is to say, the promisee made and delivered the deed, and the promisor duly made and executed the will, all as provided in the contract; and we are here holding that the will thus made is irrevocable. This being the situation,

the court will give no attention to the adequacy of the consideration. Kisor v. Litzenberg, 203 Iowa 1183, 212 N.W. 343."

See also Krcmar v. Krcmar, 202 Iowa 1166, 1169, 211 N.W. 699.

II.   Did the trial court improperly deny judgment against Merle Sawyer by reason of the gift of $4000 to him by William T. Wadsworth during his lifetime? Did the court properly enter judgment in favor of Merle Sawyer on the note of $1000 here in controversy? These questions must be determined in connection with the appeal of the appellants. The evidence of disinterested witnesses discloses the following:

Mrs. Addie Brown who assisted in the care of Mrs. Wadsworth testified in part, subject to certain objections, as follows:

"Q. After Mr. Sproatt was there on December 28th, did you hear any conversation between W. T. Wadsworth and Nellie Wadsworth? A. I heard him come in and ask her, 'Why not treat the two nephews alike?' That was the only thing that I heard. He asked, 'Why not treat the two nephews alike, the two boys?' Q. You heard him say that? * * * A. To Mrs. Wadsworth."

Josephine Spurgeon who also assisted in the care of Nellie Wadsworth testified in part, subject to objections, as follows:

"Q.   Do you know when he [Wadsworth] came into her room and how he happened to come in? A. She asked me to call him, she wanted to talk to him. * * * Q. What did he do when he came in? A. Took a chair and sat down by the bed. Q. What was said by either one of them? A. She said, 'Will, I will change that deed and put in the boys' name if you will leave what you got or fix it so that the two girls get it.' Q. What did he say? A. He said, 'Get busy.' Q. What else did he say? A. She said, 'Okay'. Q. She said, 'Okay?' A. Yes. Q. Was anybody else present at that time except you and Nellie and William Wadsworth? A. Not in the room."

John S. Sproatt's testimony relative to his conversation with Nellie Wadsworth has been heretofore set forth. His testimony pertaining to the making of the first will of W. T. Wadsworth is as follows:

"I took the deed and returned to my office and in a short time William Wadsworth came to the office with Mr. Allgood. Mr. Wadsworth stated that he wanted to make a will so that all of his property would go to his two daughters, Hila Ewing and Blanche Hatcher, equally. I discussed it with him and prepared a will for him which left his property equally to his two daughters."

The nature and extent of the contract entered into between the parties must be determined from the evidence presented. As heretofore noted, Josephine Spurgeon testified that Mrs. Wadsworth stated in her presence, in a conversation with her husband, that she would change the deed if he would leave what he had or fix it so that the two girls would get it. As bearing on the construction given to the agreement by Mr. Wadsworth the copy of the will which he signed on December 30, 1948 discloses that after the payment of his debts his will provided that he bequeathed and devised the property "of which I may die seized or possessed" to his two daughters, Blanche Hatcher and Hila Ewing.

It should be kept in mind that in the testimony of Josephine Spurgeon it is shown that the agreement included an implied limitation which restricted Mr. Wadsworth from making disposition of his property after the making of his will. In considering the disposition of property after entering into a contract such as was made between Mr. and Mrs. Wadsworth we must give consideration to the evidence which shows the circumstances under which the gift was made as well as the applicable law.

In considering the circumstances under which the gift was made the record discloses that in a prior hearing Merle Sawyer testified as follows:

"Q. How much money and bonds and checks did you obtain from W. T. Wadsworth during the last year? A. I received one check and he gave it to me and told me to keep it, it was mine. Q. For how much? A. $4000. Q. * * * When was that? A. Sometime between July the —— middle and the 25th. Q. What took place between you and W. T. Wadsworth at that time? * * * A. He gave me this money. He said he wanted me to have it for —— it was mine and to keep it. And he didn't

seem to want his sons-in-law to get this money. Q. * * * Let's see, where were you when he gave you this check? A. At my house. Q. In your home on the farm? A. That's right. Q. And about that time you went with him to Sigourney to have a will made? A. No, sir. Q. You knew he had a will made at Sigourney? A. Yes, sir. Q. Well, when did you get the check with reference to the time that will was made? A. It was afterwards. Q. How long after? A. Oh, I wouldn't say the exact time——thirty days maybe. * * * Q. What did you say to him and what was the conversation between you and W. T. Wadsworth the day you got that $4000 check? A. He told me he wanted me to have that money and he never wanted it back and it was mine and that was some money that G. G. Ewing wouldn't get. * * * Q. Did you write out the check for $4000 that I now show you? A. No, sir. Q. Who wrote it? A. My wife. Q. Who were present when you got this $4000 check from W. T. Wadsworth? A. My wife. Q. Anyone else? A. No, sir. Q. Were you there? A. Yes. Q. And your wife wrote out the check? A. Yes."

As further evidence of the purpose and attitude of William T. Wadsworth in making the $4000 gift to Merle Sawyer, a brief portion of the testimony of Duncan Reid, who was called as a witness on behalf of Merle Sawyer and Ronald Sawyer relative to a conversation he had with W. T. Wadsworth, is set forth:

"A. I saw him a few days before he died, sitting in his car on the west side of the square, and had a conversation with him. Q. In that conversation I will ask you whether or not there was anything said about Merle Sawyer. A. Yes there was. Q. What did he say? A. Well, he told me that he had given Merle Sawyer a check for some money. Q. Did he say what the amount of the check was? A. Yes he did. Q. What did he say? A. $4000. * * * Q. What did he say to you in regard to wanting Mr. Sawyer to keep this $4000, if anything? A. Well, the reason why he wanted Mr. Sawyer to have and to keep this $4000 was he felt as though his sister never got her share of the home estate, that is the W. T. Wadsworth brothers' and sisters' estate and he felt as though he wanted him, he owed it to him and her and that was his only way to make it right."

■ Where the contract covers only what property the promisor may leave at his death the promisor is not restricted in the use, control and disposition of his property during his lifetime and transfers or conveyances before his death are valid where there is no intent to defraud. 68 C. J., Wills, section 204, page 586. Gifts which are reasonable, not testamentary in effect, and which are not made to circumvent the contract or have that effect may be made. 68 C. J., Wills, section 204, page 587.

In Kisor v. Litzenberg, supra, we held that where the pleaded contract did not involve a restraint on alienation we would not disturb a later conveyance.

The case of Dickinson v. Seaman, 193 N. Y. 18, 24, 85 N.E. 818, 820, 20 L. R. A. N. S. 1154, 1157, 1158, pertains to a gift after an antenuptial contract had been entered into and to that extent is different from the facts in the instant case. However, a statement therein made is here applicable:

"It is asked, however, whether the decedent could give away all his property to his own relatives, and thus defeat the antenuptial contract altogether. And, assuming that he could not do this because it would be unreasonable, it is further asked where the line is to be drawn between the power to give away all and to give away nothing. That line is to be drawn where the courts always draw it when they can—along the boundary of good faith. If the decedent had given away property with furtive intent, for the purpose of defeating the antenuptial contract and of defrauding the plaintiff, the gift would have been void. No such fact is alleged in the complaint. No case of fraudulent intent or fraud, in fact, is presented by the plaintiff. Her theory is that any gift, or at least that any substantial gift by the decedent, even if made with the best of intentions, was unauthorized and void. We do not so read the contract. Any gift made with actual intent to defraud would be void, but none made without such intent, unless so out of proportion to the rest of his estate as to attack the integrity of the contract, when it would be fraudulent as matter of law. The gift might be so large that, independent of intent or motive, fraud upon the contract would be imputed, or arise constructively by operation of law. Reasonable gifts were impliedly authorized. Unreasonable gifts were not, even if made without actual intent to defraud. In the

absence of intentional fraud, the question is one of degree and depends upon the proportion that the value of the gift bears to the amount of the donor's estate."

And in Eaton v. Eaton, 233 Mass. 351, 375, 124 N.E. 37, 43, 5 A. L. R. 1426, 1435, we find a statement which, although it pertains to an antenuptial contract, has application to the facts in the instant case:

"The true rule, fairly to be deduced from the weight of authority and resting on sound reason, is that a man, who has entered into an antenuptial agreement with a woman, who becomes his wife, to give her by will a proportional part of his estate, may without breaking his agreement make gifts during his life in good faith and reasonable in amount having regard to all the circumstances, but he cannot make gifts either absolutely, conditionally, indirectly or otherwise for the main purpose of defeating his agreement and preventing it from operating for the benefit of his wife. The motive in such a case affects the validity of the transaction because it determines 'the extent of a privilege to infringe upon the admitted right of another.' Leonard v. Leonard, 181 Mass. 458, 461 [92 Am. St. Rep. 426, 428, 63 N.E. 1068, 1069]."

In our Iowa cases dealing with mutual wills we find some statements relative to the law applicable thereto, which statements have a bearing on the present question before us. It is true there are no mutual wills here involved but the making of the deed by Mrs. Wadsworth and the subsequent will made that same day by Mr. Wadsworth took on the characteristics of mutual wills. In the case of Campbell v. Dunkelberger, 172 Iowa 385, 389, 153 N.W. 56, 58, we said: "After the death of one of the parties, however, if the survivor takes advantage of or accepts the provisions made for the other, it would seem that the survivor may not dispose of his property otherwise than according to the terms of the will."

And in the case of Powell v. McBlain, 222 Iowa 799, 802, 269 N.W. 883, 885, it was stated:

"It is a fundamental principle, under our decisions, that where a contract is made with a proper consideration, by which

the promisor agrees to will property to the promisee, and, in accordance therewith, the contract is carried out by the promisor's making a will in accordance with the terms of the contract, such will is irrevocable. Stewart v. Todd, 190 Iowa 283, 173 N.W. 619, 180 N.W. 146, 20 A. L. R. 1272; Campbell v. Dunkelberger, 172 Iowa 385, 153 N.W. 56; Baker v. Syfritt, 147 Iowa 49, 125 N.W. 998; Kisor v. Litzenberg, 203 Iowa 1183, 212 N.W. 343."

See also DeJong v. Huyser, 233 Iowa 1315, 1320, 11 N.W.2d 566.

In the instant case it is shown by the inventory filed by the special administrator that William T. Wadsworth died seized of $12,437.77 in deposits in the bank and a loan and savings association. He also possessed real estate, to wit, his homestead. Its value is not shown. There were several items of personal property listed but the value of them is not noted.

After consideration of the testimony heretofore set out we have concluded that the gift to Merle Sawyer was definitely contrary to the intent of the contract entered into between William T. Wadsworth and his wife. There was no direct allegation of fraud relative to the $4000 gift, but it was alleged in appellants' petition that it was violative of the contract entered into. Inasmuch as we have concluded that the acts of Mr. Wadsworth were in violation of the contract, the giving of this money took on the nature of a fraudulent act. By so doing he sought to avoid, in part, the provisions of the contract. It cannot be approved. There was an implied limitation incorporated in the agreement. The testimony does show that Mrs. Wadsworth said, "Will, I will change that deed and put in the boys' name if you leave what you got or fix it so that the two girls get it." She undoubtedly referred to what he had at the time the agreement was entered into and it should be so construed. We have concluded that it did not contemplate that Mr. Wadsworth had the right to give away a substantial portion of his property. Consequently we hold that the decision of the trial court was wrong in respect to this particular phase of the case and that judgment should be entered against Merle Sawyer for $4000 with interest from April 27, 1950, the date of the death of W. T. Wadsworth.

■ III. It is the contention of the cross-appellants that the oral agreement was in violation of section 622.32, 1950 Code, the Statute of Frauds. It is maintained that Mr. Wadsworth did not make a valid contract when he entered into the oral contract with his wife inasmuch as it is claimed it was a contract to convey an interest in real estate and consequently was in violation of the statute. In one of our late cases, Peddicord v. Peddicord, 242 Iowa 555, 559, 47 N.W.2d 264, we held that if a party either took possession of real estate or fully performed his part of the contract, it was brought within the exceptions noted in section 622.33, 1950 Code. There can be no question that the wife in the present case carried out her part of the agreement. Frick v. Rockwell City Canning Co., 192 Iowa 11, 20, 181 N.W. 475. We find no merit in this contention of cross-appellants.

■ IV. The cross-appellants also maintain that inasmuch as the claimed contract dealt with and affected the homestead of William T. Wadsworth, it was invalid in that the husband and wife did not join in the same joint instrument. Section 561.13, 1950 Code. We held against such a contention in Brandes v. Brandes, 129 Iowa 351, 357, 105 N.W. 499, relative to a situation somewhat similar to the instant case where we stated: "The contract is enforceable, even though the property constituted a homestead. Drake v. Painter, 77 Iowa 731; Winkleman v. Winkleman, 79 Iowa 319; Chew v. Holt, 111 Iowa [362] 364."

■ V. In connection with appellants' claim concerning the trial court's allowance of a judgment on the note for $1000 given to Merle Sawyer we find it was the concluding phase of a written agreement entered into by Sawyer and William T. Wadsworth. This agreement sets forth that the settlement was entered into for services rendered and for money previously lent to Wadsworth by Sawyer. There was no pleading or proof of fraud. The agreement was entered into on November 14, 1941, and the note was dated November 15, 1941. It was not, nor could it be, claimed that the evidence of indebtedness was given to lessen the share the two appellants would receive from the estate of William T. Wadsworth. There can be no question relative to the adequacy of the consideration.

We have given consideration to the several issues raised by the respective parties, particularly to the claims of the cross-

872

appellants. We find no adequate evidence of duress or undue influence in the making of the contract by William T. Wadsworth. After due consideration of the record presented and the authorities cited, we affirm on the appeal of the cross-appellants and reverse, in part, on the appeal of the appellants and cross-appellees. We remand for entry of a decree in conformity with our holdings herein.—Affirmed on appeal of cross-appellants and reversed in part on appeal of appellants.

All JUSTICES concur.