FRANK BLEZEK, Plaintiff, Appellee, v. KENNETH BLEZEK et al., Defendants, Appellants, and Cross-petitioners, Appellants.

No. 44687.

FEBRUARY 14, 1939.

Howard & Bolte and C. H. Taylor, for appellants.

Geo. J. Dugan, for appellee.

RICHARDS, J.—One Joseph Blezek died testate on August 20, 1936, holding the record title to two tracts of land in Guthrie county, one comprising 80 the other 120 acres. Though in adjacent sections the tracts were not contiguous. A son Frank Blezek, a daughter Mary Zaruba, and two grandsons Kenneth and Earnest Blezek, were the beneficiaries of decedent's will as well as his sole heirs at law. The son Frank brought this suit seeking to establish in himself the ownership of the 80-acre tract and to have partitioned the 120 acres. The grandsons answered, denying plaintiff's ownership of the 80 acres, and filed a cross-petition praying that it also be partitioned. The trial court found for plaintiff, entered decree establishing in him the title to the 80 acres and decreed the partitioning of the other tract. The grandsons have appealed and argue one proposition, i. e., that the trial court erred in establishing in plaintiff the title to the 80 acres.

Plaintiff's claim of ownership of the 80 acres was bottomed upon an oral contract alleged to have been made between him and his father, Joseph Blezek, in September or October 1906, and orally modified in 1930. Plaintiff alleged that on his part he has fully carried out the contract.

In 1904 the wife of Joseph Blezek, she being mother and grandmother of these litigants, departed this life. Up to that time the family had resided upon the 120 acres for many years. Plaintiff was a member of the household. He and his father, Joseph Blezek, continued to live upon the 120 acres, farming that and the 80-acre tract, until the fall of 1906, when plaintiff, after gathering the corn crop, removed to the nearby town of Yale, and taking his horses with him became engaged in teaming. Sometime in 1906 his father ceased active farming and thereafter, during the remainder of his life, leased the 120 acres to various tenants. After 1906 Joseph Blezek was in Jones county for a year or more among acquaintances. Then he became more or less permanently a resident of Cedar Rapids, living in a hotel during the greater part of the time until his decease. But during all the period following the year 1906 he frequently returned to Guthrie county, for periods of one or

two months, or even longer. It is the testimony of appellees Mary Zaruba and Andrew Zaruba that in September or October 1907, while Joseph Blezek was visiting in their farm home in Guthrie county, plaintiff came out from Yale to the Zaruba home to get his washing; that plaintiff finding his father there, remained for several hours. According to these witnesses there was upon that occasion a conversation between plaintiff and his father, the content of which allegedly constitutes an oral contract, on which plaintiff relies. According to these two witnesses, Joseph Blezek in this conversation expressed to his son Frank concern about Frank's staying in town, and said he, decedent, would rather see him (Frank) out on a farm, and asked Frank why he didn't move out on the 80 acres; that Frank replied he did not feel like so doing because everything had been moved off the 80 except the house and barn. Frank was referring to the fact that improvements including 5 or 6 of the smaller buildings had been removed to an adjacent 80-acre tract as an incident to a voluntary partitioning of a quarter section made up of the two eighties. Mary Zaruba testified that following Frank's statement with respect to improvements having been removed, decedent said in substance, "I will tell you what I will do Frank, you give me $3 for my support and you can improve the place to suit yourself, and you put on what you wish, and when I am through with it the place is yours." Andrew's testimony is of similar purport, he referring to the $3 as $3 per acre. Both witnesses testify that Frank said to his father that that was all right, that it suited him (Frank) all right, and that he would move out on the land the next spring; that his father replied that would be all right, and told Frank to move out there and do things out there to suit himself.

At the time of this alleged transaction there were three of decedent's children living, Frank, Mary and Joseph, Jr., the latter being the father of the cross-petitioners: Decedent had immigrated to this country from Bohemia and farming seems to have been his lifelong occupation, until he retired in 1906. There is abundant testimony, additional to that of the Zarubas, that decedent had a strong desire that his son Frank be established upon a farm, rather than follow in town the occupation for which he had left the land. At the time of the alleged conversation Frank was about 22 years old, and the record shows that toward him decedent exhibited a strong attachment,

continuing to the end of the father's life. The wife of Joseph Blezek was no longer living. Two other sons, after reaching early manhood had died not very long previously. It appears that for himself decedent desired to enjoy from his holdings only sufficient income that he might live comfortably. The full extent of his assets does not appear. The record convinces us that there was in decedent's mind a distinct urge or motive quite consistent with and capable of being realized through the terms that made up the alleged agreement. The witnesses Zaruba testified to a transaction which, if it established a contract, lessened their own interests in the land. Mary Zaruba frankly admitted she did not like the cross-petitioners or their mother, but we note that the trial court, in an opinion filed, stated that after observing the appearance, manner and demeanor of the witnesses, there was nothing in any way indicating that the Zarubas were not telling the truth and that the trial court felt they truthfully told the conversation between the father and Frank as they understood it.

There is testimony of a considerable number of witnesses, who had been acquaintances and neighbors of Joseph Blezek. They say they conversed with him upon occasions when he returned to Guthrie county. They relate many of the decedent's statements, allegedly made through the years Frank occupied the 80 acres, pertaining to decedent's dealings with Frank. Appellants urge that these statements were mere expressions of decedent's opinions as to what he intended to do with his property after he was through with it. For that reason, say appellants, this evidence is of no probative value as to the existence of the alleged contract. But there was more than this, more than indication of mere intention, isolated from other things. As related by these witnesses decedent's statements frequently included two propositions or elements, (1) that it was Frank who was making the improvements on the 80 acres, and to suit himself, and (2) that the land was to be or would be Frank's when decedent was through with it. The second element has the appearance of having been decedent's explanation for the first, the reason for the fact that Frank was making the improvements. At least the two propositions were co-related by decedent in what he stated. Other witnesses relate that decedent expressed himself in a still more definite manner, by saying in substance that the

80 acres is Frank's. We look upon the testimony of the witnesses who related decedent's statements, as being corroborative.

■ On or about March 1, 1908, plaintiff moved onto the eighty, and there resided continuously up to the time of the trial. The length of the period during which he remained on this land while his father still lived was somewhat more than 28 years. During this time Frank was steadily installing improvements at his own expense, and there is no doubt about the discretion having been solely Frank's as to what betterments should be made. Among the improvements he erected were a number of buildings, a large porch on the house and permanent fences. Six hundred rods of underground tile were installed. Decedent each fall visited for a month or two in Frank's home on the tract, and was conversant with all Frank was doing. Decedent often expressed to others his satisfaction therewith. The record shows that Frank lived on the tract continuously, made the payments contemplated in the alleged oral contract of 1906, and complied with an oral alteration made by him and his father in 1930 whereby the amounts to be paid annually were the taxes and such sums as might be required by his father for his own uses, in lieu of the $3 per acre. In the case of Ford v. Young, 225 Iowa 956, 282 N. W. 324, we have recently reviewed our cases that point out the necessity that the evidence to establish an alleged oral contract, such as we are considering, be clear, satisfactory and convincing, and that say it is the special duty of the court to subject such evidence to every fair test which may tend to weaken its credibility. Applying this rule, we are convinced that the testimony, viewed in the light of surrounding circumstances, compels the conclusion that the trial court reached the right conclusion.

Appellants quote from the opinion in Garman v. Wettengel, 199 Iowa 1150, 1155, 203 N. W. 266, 268, a suit for specific performance of an oral contract with a decedent, the following:

"Upon a careful and skeptical reading of this record, we have become convinced that the plaintiff's claim is not lacking in substantial merit; that there was an arrangement of some kind between her [plaintiff] and Miller [the decedent] that accounted for her devoting 15 years of her life to his comfort. The equities behind the plaintiff's claim are strong enough to

warrant their acceptance as corroboration of direct testimony in the record, in support of such claim.''

■ Also is cited Kisor v. Litzenberg, 203 Iowa 1183, 212 N. W. 343, and other cases, to the effect that when the equities are strongly in favor of the plaintiff, they may amount to corroboration of direct testimony in support of the claimed contract. Appellants urge that in the instant case strong equities do not appear, there being testimony that the average rental value of the 80 acres during the years was in excess of $3 per acre and the value of the improvements. Although in discussing corroboration, a strong equity has been mentioned in our opinions as being an influential consideration, when it is shown, it does not follow, nor have we said, that a strong or substantial equity is sine-qua-nonical. In a differing manner the corroboration was shown in the case at bar as has been related. We are not impressed with the argument that absence of ''strong equities'' detracts from the quality of the corroborative testimony that is in the record. Naturally and expectedly ''strong equities'', resulting from overreaching or unfairness of decedent, would be foreign to the atmosphere in which this father and son lived and dealt.

■ The remaining contention of appellants is that the district court erred in establishing plaintiff's title, because plaintiff inferentially admitted in his petition that when Joseph Blezek died the 200 acres were subject to no outstanding contracts of sale. The petition stated that an attached abstract showed the title. That the title so shown was in decedent is not questioned. Preceding the allegation concerning the abstract the petition stated ''That the said decedent died seized and possessed of the following described real estate in Guthrie County towit,'' the legal descriptions then being set out. Appellants' theory is that there is a legal purport in the word ''seized'' such that when plaintiff used that term he conclusively admitted there was no outstanding contract of sale. As to the alleged admission being conclusive, appellants do not discuss the fact that in the same pleading plaintiff affirmatively alleged that there was the outstanding oral contract, pleaded as the cause of plaintiff's action, nor the question whether ''seized'' may have been used by the pleader as a way of stating that when decedent died

he held the legal title, nor need we discuss these matters for the reasons that later appear.

A familiar rule of practice has been stated in this general manner—as to an admission made in the pleadings forming the issues, there is no issue, no proof is required, and the party making the admission is bound thereby. Shipley v. Reasoner, 87 Iowa 555, 54 N. W. 470.

But there is another rule by reason of which an appellant's contention may not be made for the first time in this court. Recognizing that fact appellants point out that in the trial they objected in an omnibus manner to all the testimony of various witnesses, on the ground that the testimony of these respective witnesses was immaterial, irrelevant, incompetent and redundant to any issue in the case. But in no manner did appellants make an objection that there was no issue before the court, nor did they intimate to the court that their objections had to do with any alleged admission eliminating any issue. They tried the case, as did plaintiff, on the apparent theory that the important issue in the case was the existence or nonexistence of the oral contract. The testimony they offered was directed to that question. The trial court was apparently innocent of any knowledge that there was in the case the proposition appellants now bring into this court. Plaintiff, though he could have amended if it was necessary to meet appellants' theory, was not afforded an opportunity. Appellants, making only such objections as appear in the record, cannot successfully affirm that they presented to the trial court the question whether there was the alleged conclusive admission. Harvey v. Mason City & Ft. D. Ry. Co., 129 Iowa 465, 105 N. W. 958, 3 L. R. A. (N. S.) 973, 113 Am. St. Rep. 483; Remington v. Machamer, 192 Iowa 1098, 186 N. W. 32; Page & Son v. Grant, 127 Iowa 249, 103 N. W. 124. The trial court not having had an opportunity to determine the question we decline to consider it. The decree of the district court is affirmed.—Affirmed.

MITCHELL, C. J., and OLIVER, SAGER, HAMILTON, STIGER, MILLER, HALE, and BLISS, JJ., concur.