HILDA G. SWAN et al.; OLVENA FOSTER, Administratrix, Appellants, v. SVEN JHONSON et al., Appellees.

No. 45392.

FEBRUARY 11, 1941.

Yeaman & Yeaman, for appellants.

Forsling, Cover & Kingsbury, for appellees.

WENNERSTRUM, J.—Charles G. Swan died intestate on September 16, 1939. Since 1931 he had been the owner of a small residence property in Sioux City. He rented the property, but reserved one room for his own use and occupancy. On June 13, 1906, he was married to one of the plaintiffs, Hilda G. Swan. This plaintiff and the decedent had an adopted daughter, who at the time of the trial was 23 years of age. Hilda G. Swan, the wife, and Frances Huse, the adopted daughter, now married, are the only heirs of the decedent, Charles G. Swan. There is no dispute in the record as to this fact.

During the 19 years prior to the death of the decedent, Hilda G. Swan had resided in San Francisco, California, as had also the adopted daughter. The wife would return to Sioux City each year. The evidence discloses that these visits were as often as five times during some years and that she returned not less than two times in any one year. On the occasion of these visits to Sioux City Hilda G. Swan, the widow and one of the appellants, according to her testimony, lived with the decedent as his wife but they did not stay at the residence property owned by decedent. They would visit and stay at the home of friends.

Sometime during the year 1933 Sven Jhonson and Dorthy Jhonson, husband and wife, and the appellees in this action, rented the property involved in this litigation from Swan and took up their residence in the property, Swan retaining one room for himself. During the five or six years prior to his death Swan was furnished by the Jhonsons with a portion, if not all of his board, and also his laundry requirements. In addition to the above items the Jhonsons paid to Swan $15 per month rent.

After the death of Charles G. Swan, the Jhonsons remained in the property and refused to give possession of it, claiming that they were the unqualified owners of it by purchase under an oral contract and that the property had been delivered to them and that they had performed their part of the agreement.

Hilda G. Swan and Frances Huse, the plaintiffs-appellants, then brought an action in equity against the Jhonsons, asking that the title to the property in question be quieted in them as heirs at law of Charles G. Swan. The defendants-appellees filed

a cross-petition claiming that they were the unqualified owners of the property under their oral agreement of purchase from Charles G. Swan, deceased. During the litigation in the district court Olvena Foster, administratrix of the estate of Charles G. Swan, deceased, was joined as a plaintiff in the action. The district court found for the defendants and appellees upon their cross-petition, except as to the dower interest of the plaintiff Hilda G. Swan in the real estate involved. The plaintiffs appeal.

Counsel for plaintiffs-appellants raise two questions as a basis for their assertion that this case should be reversed: (1) That the evidence is insufficient to support the claims of the defendants and appellees and the ruling and decree of the court; (2) that the record shows the property in question to be the homestead of the deceased and his wife, and under the law the title thereto cannot be transferred except by written contract, signed by the husband and wife in the same joint instrument.

Inasmuch as the conclusions to be reached by this court in this case must depend upon the facts presented at the trial and their application to the law involved, it will be necessary to briefly summarize the testimony presented. However, the courts and the legal profession of this state will not be aided by a detailed statement of the testimony. Consequently a recital of the facts will be limited as much as possible.

It is shown by the evidence that Hilda Swan, the widow of the decedent, had not been at the residence owned by her husband on many occasions, and that the last time that she was there was about eight years prior to the death of decedent. At that time the Jhonsons were not living in the property. The testimony further shows that after the funeral of Charles G. Swan, the widow went to the residence occupied by the defendants-appellees, some four or five times and that on one of these trips she had a conversation with Mr. and Mrs. Jhonson about renting the property. On this particular occasion she asked the Jhonsons if they wanted to buy the house and was advised by Mr. Jhonson that he did not have enough money. It was suggested that he get a government loan and to this comment Mr. Jhonson replied, "Well I don't know, we may rent it." There was some further conversation as to the amount of rent that

should be paid and Jhonson informed Mrs. Swan that he would let her know. There was no claim made by the Jhonsons at this time that they were the owners of the property. On this particular occasion, Olvena Foster, the administratrix, her husband, Mr. Foster, and a Mrs. Carlson were present and some, if not all, of these persons testified as to the statements made by the Jhonsons at that time. Olvena Foster, the administratrix of the estate of Charles G. Swan, deceased, testified that she received most of her information concerning the Swan estate from the Jhonsons. They turned over to her the decedent's personal effects. This witness also testified that she met the Jhonsons at the time she was making the funeral arrangements and as to their conversation at that time, Mrs. Foster testified that their statements were substantially as follows: ·

They hoped it would be a nice funeral because Mr. Swan was such a good man and deserved a nice burial and they hoped she would see to it that he had the best because he had plenty of money and also had a house and that it was all clear. They told her about Mr. Swan putting in a furnace and screening in a portion to make extra bedroom space after their little girl was born and he was always fixing up the house and keeping it in good repair. He had it insulated and weather stripped. The two sisters of Mrs. Foster were present during this conversation. This witness also testified that on another occasion she and her husband and Mrs. Swan went out to the Swan residence property where she heard the conversation as heretofore related by Mrs. Swan. At that time she said she had a ''For Sale'' sign with her and suggested that she be permitted to put it in the window with her telephone number on it. Mr. Jhonson gave her a hammer and some tacks and the sign was put up on the outside of the house. Testimony as to the conversations with the Jhonsons as heretofore set out was given by other witnesses who were present at the times they occurred.

There was also testimony given, on behalf of the plaintiffs, by Mrs. E. A. Engerman who stated that she had a conversation with the decedent the Monday before he died. They had some talk about wills. Swan, at that time told the witness,

"There is no need for me to make a will. There is only Hilda and Frances and they will get it anyhow."

The evidence on behalf of the defendants is substantially as follows:

One witness testified that on one occasion Swan had stated to him that he (Swan) had given the property to Sven Jhonson and his wife "in return for care that he had received and that he was going to receive for the balance of his life." It was stated that this remark was made the latter part of 1933 or 1934 and that he made similar statements several times later. On. one occasion Swan is quoted by this witness as stating that he was glad that he made the gift to Mr. Jhonson and his wife and that he was well satisfied with the care he was getting. Another witness testified that at one time in 1936 he was talking with Swan about renting the house and Swan said, "If it had been a little earlier maybe I could have made a deal with you, but now I have come to an understanding with Sven and Dorthy Jhonson that in return for the home there they will take care of me for the rest of my life." This witness upon cross-examination stated that Swan did not tell him that he had sold or deeded the property to the Jhonsons. He was further asked as to whether or not Swan had given the property to these people or whether he was going to give it to them and the witness replied that Swan said, "He was going to give it to them in return for his care" and that he did not tell the witness he had given it to them. A further witness called by the defendants-appellees, testified that on one occasion he met the decedent in the courthouse during the fall of 1938 and inquired as to Swan's mission and he replied, "I am going to see about the taxes on that house out on the west side." This witness inquired as to how much rent Swan was getting for the house and the decedent replied, "I made a deal with Sven out there for him to take the property over so long as I have been making my home out there."

Sven Jhonson, one of the defendants in this action and one of the appellees, was called as a witness and over objections as to his competency as a witness under section 11257 of the Code of Iowa [1939] testified that Charles G. Swan boarded

with the defendants during the time that they resided in the property during the lifetime of the decedent and that the wife of this witness did Swan's washing. The witness after further objections as to the competency of the witness testified that he claimed ownership in the property involved, to the exclusion of everyone except his wife and that he and his wife are the sole and absolute owners of the property.

Dorthy Jhonson, one of the defendants in this action and one of the appellees, was also called as a witness for the defendants. She stated that she is the wife of Sven Jhonson and that they live at 228 South Judd Street and had lived there for seven years. She also testified that they moved into the Swan property in the spring of 1933 and that Charles Swan lived with them there until the time of his death. She further testified that he had most of his meals with them and that with the exception of the first four or five months they lived in the house she had done Swan's laundry work. She further testified that she claimed to be the owner of the property and holds possession under such claim in company with her husband. Sven Jhonson was further recalled as a witness and over objections as to his competency as a witness under section 11257 of the Iowa statutes testified that he claimed that he acquired title to the property from ''Charley'' and that he had claimed ownership for about five years. Upon cross-examination the witness stated that he had never paid any taxes on this property and never paid any insurance on it.

A Mrs. Carlson was also called as a witness for the defendant and testified that she was acquainted with the defendants and cross-petitioners and had known them six or seven years and testified further as to the decedent, Swan, taking his meals with the Jhonsons and that Mrs. Jhonson did his laundry work. She was further asked as to whether or not she had ever inquired of Mrs. Jhonson how much rent she paid a month and she replied she had and that Mrs. Jhonson told her she paid $15 per month.

One Dr. J. E. Swanson was a witness who testified on behalf of the defendant. His testimony was in substance as follows: ''We had no conversation about his property but he made a statement on one of his visits to my office that when he passed away the people in his house would have his property.'' On a

later occasion he was called to the residence to see Swan and Dr. Swanson testified that at that time he said, "Doctor, I thought I was going to die, but I have everything fixed and what I told you before."

This court, in the case of Williams v. Harrison, in an opinion written by Justice Bliss and found in 228 Iowa 715, 722, 293 N. W. 41, 44, succinctly sets forth the rules of law that are applicable for consideration in cases of this character. It is there stated:

"It has always been the holding of this court, and of the courts generally, that claims of this kind should be scrutinized with the greatest care, and established only upon the most satisfactory evidence."

This court has so recently passed upon and commented upon this particular question in Williams v. Harrison, supra, that further reference to the many Iowa authorities are here deemed unnecessary but for an enumeration of all the cases applicable, reference is here made to that case.

As there noted our court has held that proof of an oral contract as is claimed by the defendants-appellees in the present litigation must be "Clear and satisfactory"; "Clear and unequivocal"; "Clear, unequivocal and definite"; "Direct, positive, express, and unambiguous"; "Clear, definite, and conclusive"; and "Clear, substantial and convincing."

In the case of Sharpe v. Wilson, 181 Iowa 753, 756, 161 N. W. 35, 36, this court announced a further rule of guidance in cases of this character when it stated as follows:

"Other courts hold that the proof of such a contract must be so cogent, clear and forcible as to leave no reasonable doubt in the mind of the chancellor as to its terms and character."

We have read and given consideration to the cases cited by appellees, namely: Houlette v. Johnson, 205 Iowa 687, 216 N. W. 679; Ford v. Young, 225 Iowa 956, 282 N. W. 324; Blezek v. Blezek, 226 Iowa 237, 284 N. W. 180. In these citations no rule of law is set forth different from that commented upon in this opinion. In the last cited cases the proof presented amply

justified the holdings there made. In cases of this nature each case must stand or fall on the sufficiency of the proof presented.

After a review of the evidence in this present case and its application to the rules of law applicable to cases of this nature we are constrained to hold that the testimony presented by the defendants and cross-petitioners relative to their claimed oral contract failed to meet the tests, previously enumerated. There is no competent evidence of an express oral contract and the remaining testimony upon which defendants rest their case fails to reach the standard which this court has held will sustain a contract such as is claimed by the defendants-appellees.

It is therefore the conclusion of this court that the trial court was in error in holding that the defendants and appellees had met the burden of proof required to substantiate their allegations of an oral contract. The conclusion we have reached as to the insufficiency of the testimony to support the oral contract of purchase makes it unnecessary for us to pass upon the other question raised upon this appeal. The case, therefore, is reversed and remanded, with direction that a decree in conformity with our holding as herein set forth be entered in the lower court.—Reversed and remanded.

HALE, C. J., and STIGER, MITCHELL, SAGER, BLISS, MILLER, and GARFIELD, JJ., concur.