83   411
84   376
83   411
101   659
83   411
110     9
83   411
e120   399
83   411
134   206

W. R. EMERICK, Appellee, v. DAVID EMERICK, Appellant.

Guardians: APPOINTMENT OF FOR FEEBLE-MINDED PERSONS. A person of the age of seventy-nine years, and possessing an estate of over five hundred acres of land, yet who appears to be capable of transacting the ordinary business involved in taking care of his property, and to understand the nature of the business, and the effect of what he does, and to be able to exercise his will with reference to such business with discretion, notwithstanding the influence of others, is not a person of such unsoundness of mind as to warrant the appointment of a guardian of his property under section 2272 of the Code.

*Appeal from Mills District Court.*—HON. GEORGE CARSON, Judge.

TUESDAY, OCTOBER 13, 1891.

THE plaintiff seeks to have appointed a guardian of the estate of the defendant on the alleged ground that he is of unsound mind, and is not possessed of the judgment necessary for the management of his estate.

The cause was tried to a jury, which found that the defendant was of unsound mind. A judgment was rendered on the verdict, and the defendant appeals. *Reversed*.

*Scott Lewis* and *H. C. Watkins*, for appellant.

*T. L. Genung* and *Shirley Gilliland*, for appellee.

ROBINSON, J.—This proceeding was instituted under section 2272 of the Code. The petition alleges that the defendant owns and has the management of an estate of five hundred and fifty-seven acres of land, situated in Mills county, of the value of about twenty thousand dollars; that he is old and infirm, and of unsound mind, and is not possessed of the judgment necessarily required for the management of his estate; that he has become possessed of the delusion that he can make large sums of money in the real-estate business in Nebraska, and for the purpose of engaging in such business he has contracted to sell his real estate for four or five thousand dollars less than it is worth; that his wife exerts an undue influence over him, to the detriment of himself and of his property; that by reason of his infirmities of mind and body, and the undue influence of his wife, he has been attempting to dispose of his property in various ways, and place it under the control of his wife or her friends; and that he has not sufficient mind to resist her undue influence. The defendant admits the ownership of the land as claimed by the plaintiff, but denies that he is of unsound mind, and that he is subject to undue influence. The defendant was seventy-nine years old at the time of the trial in the district court. Two years before that time his wife died, and a year and a half after her death he married his present wife. She was active in bringing about the marriage, and some of the evidence tends to show that she became a party to it

for mercenary reasons, and that she attempts to influ-
ence improperly her husband against his children, of
whom the plaintiff is one.   There is evidence to show
that the defendant is easily influenced to become surety
for irresponsible persons, and that he has incurred
losses by so doing.   He admits having contracted to
sell his land for twenty-five dollars per acre, but it is
not certain that it is worth much, if any, more than
that amount.   The evidence as to his mental capacity
was conflicting, and, had the jury found that he was of
sound mind, the verdict would not have been without
support in the evidence.

That being the condition of the case, the court
charged the jury, in substance and effect, that a person
of sound mind is one who exercises ordinary under-
standing and ability in the transaction of business,
and that, if the defendant was not possessed of "suffi-
cient strength of mind and ability to transact his busi-
ness affairs with ordinary care and prudence, then, in
law, he will be deemed of unsound mind."   The
question presented for our determination is whether
the test of mental unsoundness given by the court is
correct.   Section 2272 of the Code provides for the
appointment of a guardian of the property and minor
children of a "person of unsound mind."   The statute
is silent as to what shall constitute the unsoundness
which it contemplates, but it is clear that it relates to
the capacity of the person affected to transact business.
The protection of property is one of the main objects
of such statutes as that under consideration, and the
test of the unsoundness in question is largely the
incompetency of the person to manage property in a
rational manner.   1 Wharton & Stille on Medical
Jurisprudence, sec. 103.   A person may be so weak
and infirm as to be easily influenced in such manner
that the transactions had under the effect of such influ-
ence will be set aside, and yet not be so unsound of

mind as to warrant the appointment of a guardian of his property.  Sec. 104.  The unsoundess of mind which will justify such an appointment must be more than mere debility or impairment of memory.  It must be such as to deprive the person affected of ability to manage his estate.  *In re Lindsley*, 10 Atl. Rep. (N. J. Ch.) 549.

The fact, that a person by reason of age, ignorance and feeble condition of mind and body is unfit to manage his estate judiciously, will not authorize the appointment of a guardian of his property.  *Commonwealth v. Reeves*, 21 Atl. Rep. (Pa. Sup.) 315.  "Imbecility of mind is not sufficient to set aside a contract when there is not an essential privation of the reasoning faculties or an incapacity of understanding and acting with discretion in the ordinary affairs of life."  2 Kent's Commentaries, 609.  "Courts of law, as well as equity, afford protection to those who are of unsound mind.  They endeavor to draw a line between sanity and insanity, but cannot so well distinguish between degrees of intelligence."  1 Parsons on Contracts, 387.  "The law does not assume to measure the different degrees of power of the human intellect, or to distinguish between them where the power of thought and reason exists."  *Somers v. Pumphrey*, 24 Ind. 245.  In *Davren v. White*, 42 N. J. Eq. 569; 7 Atl. Rep. 682, there was evidence to show that the person whose act was in question lacked mental capacity.  But the court held that the test in such cases is, "Did the person whose act is brought in judgment possess sufficient ability at the time he did the act to understand in a reasonable manner the nature and effect of his act or the business he was transacting?"  "Although the mind of an individual may be to some extent impaired by age or disease, still, if he be capable of transacting his ordinary business, if he understand the nature of the business in which he is engaged

and the effect of what he is doing, and can exercise his will with reference thereto, his acts will be valid." *English v. Porter*, 109 Ill. 291. In *Fiscus v. Turner*, 24 N. E. Rep. (Ind. Sup.) 662, a rule was approved as follows: "Unsoundness of mind is where there is an essential privation of the reasoning faculties, or where a person is incapable of understanding and acting with discretion in the ordinary affairs of life." A court of equity will not ordinarily set aside a transaction on the ground of mere weakness of understanding, or liability to be sometimes deceived and duped, on the part of one of the parties to it. Such party must be, in a legal sense, of unsound mind. *Henderson v. McGregor*, 30 Wis. 80.

Some of the authorities cited refer to the mental capacity which is sufficient to enable a person to enter into a valid contract. Cases may arise where a person competent to make such a contract is so subject to an improper influence, or is so affected by some delusion, or is so liable to be controlled to his prejudice by some other cause, that he should be deprived of the right to manage his property; but ordinarily a person who has sufficient mental capacity to make a valid agreement in regard to his property, and to manage it with reasonable care, unaffected by another's will, should be permitted to retain it. It is manifest that there may be such a degree of mental capacity less than that possessed by persons of ordinary understanding and ability. The deficiency may be due to ignorance, or a want of shrewdness, or to other causes which do not denote unsoundness of mind. If a person may be deprived of the control of his property, because he does not exercise ordinary understanding, ability and prudence in managing it, large numbers of people who now display a reasonable degree of care and judgment in accumulating, keeping and disposing of property may be deprived of the right to do so, because the

business skill and ability they manifest is not quite equal to that commonly exercised. We do not think such a rule as that should prevail. In *Seerley v. Sater*, 68 Iowa, 375, it was said that, "A person of unsound mind is one incapable of transacting the particular business in hand." The question to be determined in this case was whether the defendant was capable of managing his estate, not whether he was capable of managing it as well as such estates are commonly managed. No general rule can be given which will be alike applicable to all cases, but each must be determined largely by its own facts and the conditions which control it. In this case if the defendant is capable of transacting the ordinary business involved in taking care of his property, and if he understands the nature of the business, and the effect of what he does, and can exercise his will with reference to such business with discretion, notwithstanding the influence of others, he is not of unsound mind, within the meaning of the statute, and should not be deprived of the control of his property. The charge of the district court required a higher degree of mental capacity than that, and is to that extent erroneous. Other questions are discussed by counsel, but, as they are not likely to arise on another trial, need not be determined.

For the reasons indicated the judgment of the district court is REVERSED.