IN RE ESTATE OF LYDIA E. CLINE, deceased.

H. A. CLINE (LOIS FLOREINE RUTH, executrix of last will and testament of H. A. Cline, deceased, substituted plaintiff) et al., appellees, v. HENRY J. VRIEZELAAR, temporary administrator of estate of Lydia E. Cline, et al., appellants.

No. 49603.

(Reported in 93 N.W.2d 708)

266

DECEMBER 16, 1958.

Johnson & Johnson, of Knoxville, for appellants.

H. E. de Reus, of Knoxville, and Lehmann, Hurlburt, Blanchard & Cless, of Des Moines, for appellees.

OLIVER, J.—Lydia E. Cline died in Chicago, Illinois, February 23, 1955, aged ninety-four years. Her husband, from whom

she had been divorced in 1895, had died April 12, 1949. Her only heirs-at-law were her three children, of whom H. A. Cline (who died since the trial and for whom his executrix was substituted) and Sarah Elizabeth Hodges are plaintiffs and appellees herein. The defendants and appellants are Henry J. Vriezelaar as temporary administrator of decedent's estate, decedent's daughter Anna Waber, Anna's husband, James W. Waber, and their son, James Thomas Waber. February 25, 1955, defendant Anna Waber, as proponent, offered for probate in Marion County, Iowa, decedent's purported will, of date July 29, 1949, and a codicil thereto, of date May 11, 1951.

Each plaintiff filed objections to the probate of these instruments and thereafter they jointly instituted this suit. Plaintiffs' pleadings alleged:

That on October 18, 1944, a family settlement agreement was made, consisting of a written agreement between decedent's three children and an oral agreement between one child and decedent, for the benefit of all, that decedent's three children should share equally in her estate; that the alleged will and codicil constituted an attempted violation of the family settlement agreement; that a confidential relationship existed between the decedent and defendant Wabers; that the conduct of the defendant Wabers, including the procurement of the alleged will and codicil, constituted fraud. Plaintiffs prayed that, under the family settlement agreement, it be established, that plaintiffs were each entitled to an undivided one-third interest in the estate of their mother, superior to the rights of the defendants; that a trust be impressed upon two thirds of such estate in favor of plaintiffs; that defendants be required to specifically perform their part of the family settlement agreement, and for general equitable relief.

The trial court adjudged that the family settlement agreement under the oral contract between decedent Lydia E. Cline and H. A. Cline and the written contract between the plaintiffs H. A. Cline and Sarah Elizabeth Hodges and defendants Anna Waber and her husband, James W. Waber, of date October 18, 1944, be established as a valid and binding agreement, under which plaintiffs were each entitled to an undivided one-third interest in decedent's estate, subject to debts, etc., and accord-

ingly it ordered a trust impressed upon said two thirds in favor of the plaintiffs. The judgment ordered also that defendants specifically perform the covenants of the oral and written agreements, and provided that jurisdiction be retained for the purpose of enforcing the judgment. Defendants have appealed.

I. Appellants James W. Waber and Anna Cline (Waber) were married in 1914. At that time Lydia Cline was living in her own home in Pleasantville, Marion County, Iowa. Her two other children, plaintiffs herein, had previously married and had left the home. A few months after the marriage of the Wabers they moved to Chicago where they continued to live. Thereafter Lydia Cline lived with them most of the time, although she retained her home in Pleasantville. Apparently Mrs. Cline's trips to her home became more infrequent as her age advanced. Mrs. Waber testified Mrs. Cline was bedfast in the Waber home for four years before her death in 1955.

In January 1941, upon Lydia E. Cline's own application which stated she was unable to properly care for her property, a guardian was appointed for it under a statute, now section 670.5, Code of Iowa, 1958. Her real estate then consisted of a 152-acre farm and her residence in Pleasantville. She had also a life estate in 427 acres of farm land in Marion County, Iowa, and a life estate in a house in Pleasantville. Subsequently she made application for termination of the guardianship. This was denied May 18, 1950, based upon a finding she was then a person of such unsoundness of mind that she was incapable of properly managing and controlling her property and business affairs in a rational manner.

Prior to that time differences had arisen between members of the family, apparently largely over property rights. H. A. Cline had instituted, in the Municipal Court of Chicago, an action against his mother, Lydia, on her promissory note for $2294.31, of date August 30, 1940. After the trial had started, the following stipulation was made and the case dismissed, accordingly:

"AGREEMENT (Exhibit P-5)

"This AGREEMENT entered into between Mrs. Sarah Elizabeth Hodges, Mrs. James W. Waber, Henry Alfred Cline, (daughters and son respectively of Lydia Ellen Cline) and

James W. Waber (son-in-law of Lydia Ellen Cline) deeming it to their mutual interest and to prevent family discord, agree to forgive and forget all unkind feeling against one another and their mother Mrs. Lydia Ellen Cline. Further agreeing to renounce and relinquish any claim which either of them now has, or claims to have against Lydia Ellen Cline or against each other, do hereby mutually promise and agree with each other, as follows:

"1. It is stipulated and agreed, that Henry Alfred Cline, one of the parties to this agreement, will immediately after the execution of this contract, instruct his attorney to withdraw and dismiss his suit against his mother, Lydia Ellen Cline, now pending in the Municipal Court of Cook County, Illinois.

"2. Each of the undersigned parties represent to the others that no deed or conveyance of real estate has been given to him or her or to his or her child or children by the said Lydia Ellen Cline.

"3. Each of the undersigned hereby renounce, relinquish and waive any claim which he or she now has or claims to have against said Lydia Ellen Cline for any obligation or indebtedness incurred prior to the execution of this agreement.

"4. Each of the undersigned hereby agrees not to accept any promissory note, obligation or other legal instrument of any kind signed or executed by or on behalf of said Lydia Ellen Cline, excepting year to year lease of real estate.

"5. The undersigned hereby represent that no assignment or transfer of any claim against said Lydia Ellen Cline has heretofore been made by either of them and each of the undersigned hereby agree that they will not hereafter assign or transfer any such claim to any person, firm or corporation which is based upon any alleged claim or indebtedness arising prior to the execution of this agreement.

"6. It is further understood and agreed that Mrs. Sarah Elizabeth Hodges, Mrs. James W. Waber and Henry Alfred Cline have no desire to receive from their mother's estate more than their legal one-third interest and agree not to claim more than their legal inheritance of one third, to each, upon the death of their mother, against her estate.

"7. If any party hereto shall hereafter recover a judgment in any court of law against the said Lydia Ellen Cline, the amount of such judgment shall be deducted from the share which such party would otherwise be entitled to receive from the estate of said Lydia Ellen Cline.

"8. Nothing herein shall be construed as affecting in any way the rights of any of the aforesaid children as remainder-men in and to any lands or property now held by said Lydia Ellen Cline as life tenant.

"9. It is further understood and agreed by and between each of the undersigned that in the event one or more of the undersigned has misrepresented any of the facts in this contract or violates any part of this agreement then in that event that party or parties shall be liable in damages to the others, in an amount equal to the damages sustained by reason of such mis-representation or breach of this agreement.

"10. This agreement shall not be binding upon aforesaid parties until and unless each of them shall join in and consent hereto by signing this agreement.

"IN WITNESS WHEREOF, the undersigned have caused this Agreement to be signed and executed in quadruplicate by each of them on this 18th day of Oct. 1944.

> (s) Mrs. Sarah Elizabeth Hodges
> (s) Jas. W. Waber
> (s) Mrs. James W. Waber
> (s) Henry Alfred Cline"

The purported will of Lydia E. Cline dated July 29, 1949, directs payments of debts and expenses and provides:

"2. I devise and bequeath to my grandson James Thomas Waber" decedent's 152-acre farm in Marion County, Iowa.

"3. All the rest, residue and remainder of my property of every kind and character and wherever situated, I devise and bequeath to my three children, Henry Alfred Cline, Sarah Elizabeth Hodges and Anna Waber, the same to be equally divided among them; * * *."

Paragraph 4 provides for the forfeiture of the share of any person contesting the will.

The purported codicil dated May 11, 1951, revokes paragraph 3 of the will and provides:

"FIRST: I give, devise and bequeath to my beloved daughter, Anna Waber, all my personal property that I now have or may come into possession of or may be due me at the time of my demise." (The record shows the temporary administrator received from Mrs. Cline's guardian, money and grain amounting to approximately $27,000.)

"I make the above allocation to my daughter, Anna Waber, because I have lived with my said daughter practically the entire past 36 years and during all of which time she has cared and attended to me with utmost care and satisfaction, and that now that I am bedridden she continues to devote her time and attention to me."

The remainder of Mrs. Cline's property was her home in Pleasantville which was devised to Henry Alfred Cline, Sarah Elizabeth Hodges and Anna Waber to be equally divided among them.

Obviously, the testamentary instruments in question would give the bulk of Mrs. Cline's estate to appellants Anna Waber and James Thomas Waber, Anna's son.

II. Appellants admitted the written part of the agreement of October 18, 1944, Exhibit P-5, but denied the alleged oral part thereof. The trial court found the evidence established the oral agreement. This finding is entitled to substantial weight upon appeal.

The action by H. A. Cline against his mother, Lydia, had been pending in the Chicago court for some time. As the time for trial (October 1944) approached, Mrs. Waber, Mrs. Cline and Mrs. Hodges became anxious that it be settled. Mrs. Waber and Mrs. Cline went to Kansas to see Mrs. Cline's former husband, Mrs. Waber's father. He suggested to them that the children enter into a contract to waive any claims against Mrs. Cline and each other, and agree to share in her estate equally. Upon their return Mrs. Waber telephoned a nephew, Harold Hodges, a lawyer in Chicago, about the pending case and about drafting such a contract. "She said she wanted the agreement right away." Harold promptly started to draft the contract, Exhibit P-5. He turned his notes over to his brother F. A. Hodges, an attorney, who completed it. Prior to its completion F. A. Hodges called upon Anna Waber and Lydia Cline at

their home in Chicago and had evening meetings with them and James W. Waber in which the rough draft of the contract was discussed with them.

The contract was completed and was signed by Mr. and Mrs. Waber. It had been signed previously by Sarah Hodges. "The case was coming on for trial and we were to have this ready to present to Alf [H. A. Cline] when the case was reached for trial on October 18." Present at the trial were Lydia E. Cline, Mr. W. G. Maddy, the guardian of her property; her attorney, Mr. Poynton; H. A. Cline, his attorney, Mr. H. Clorfene; Mrs. Waber and several other members of the Cline family. They sat in two separate groups, one group for the plaintiff, the other for the defendant. The trial started and Mr. Maddy and Lydia E. Cline testified. H. A. Cline refused to talk to anyone in the opposing group. F. A. Hodges, acting "as liaison or go-between between the two groups, worked very diligently to see if he could not achieve some type of settlement."

Mr. Hodges testified he presented Exhibit P-5, already signed by his mother and the Wabers, to H. A. Cline and his attorney, Mr. Clorfene. After conferring with Mr. Clorfene, H. A. Cline refused to sign it, saying, "My mother is sore at me and she is going to disinherit me." Hodges told this to Mrs. Waber and Lydia Cline who were together, "and they were down in the mouth when I reported that." Mrs. Cline told him she thought the same of all her children and when she was through with her property it would go to them equally. Hodges reported this to Alf (H. A. Cline)—he had "at least two or three hitches of conversation with Alf and his attorney."

Mr. Clorfene testified: "I then went with Mr. Hodges and we had a discussion with Mrs. Lydia Cline and Mrs. Waber, in which I reported what Mr. Cline's statements were with reference to his refusing to sign the agreement * * *." Mrs. Cline said she intended that her children share equally in her property, and that she wished to dispose of this litigation and get out of the courtroom as quickly as she could.

According to Mr. Hodges, H. A. Cline still refused to sign Exhibit P-5. Hodges again talked with Mrs. Waber and Lydia Cline. Mrs. Cline stated she would make a will dividing her property among her children, equally. "You can tell Alf

[H. A. Cline] and see if he wont dismiss his lawsuit." Hodges reported this to H. A. Cline and after another discussion with Mr. Clorfene, H. A. Cline agreed to sign the contract. Mrs. Waber and Mrs. Cline were present when he agreed to sign. With several others they went into another room where Exhibit P-5 was signed by H. A. Cline in their presence.

Mr. Clorfene testified that when the agreement was signed the attorneys and he thought Mr. Maddy, also, stepped up and advised the court that the case had been settled by an agreement as to future distribution of property, and the suit was thereupon dismissed.

F. A. Hodges testified that Lydia E. Cline in the presence of Mrs. Waber then said to him:

" 'Well, you can prepare the will.' * * * They said they had decided on L. D. Teter as executor. Following this I prepared a will which provided that upon her death all of her property would pass equally to her children, naming the children.- I took it over to Mrs. Waber's house and gave it to my grandmother [Lydia E. Cline] and explained to them [Mrs. Cline and Mrs. Waber] that the will would have to be signed by two adult witnesses who were not legatees." From his files Mr. Hodges produced what he testified was a carbon copy of this will. It was placed in evidence as Exhibit P-15. A few weeks later Lydia Cline said to him, " 'You can tell Sadie that I made my will and that Sonneveld and his wife were witnesses.' "

He testified that a few months later Lydia E. Cline told him that the will had been rewritten, word for word, except that she had named a new manager (executor) in the place of Mr. Teter who had been named executor in the will, Exhibit P-15, drawn by Mr. Hodges. Defendants' answer admitted Lydia E. Cline had made a will after October 18, 1944, and prior to her purported will of July 29, 1949. The answer stated also that defendants did not have possession of that will. It is a fair inference this admission referred to the will drawn by F. A. Hodges or the will which nominated a different executor.

Mrs. Waber was the only witness who testified for appellants concerning the oral part of the alleged family settlement agreement. Her testimony was largely a contradiction of the testimony of witnesses for appellees upon that issue. Various

circumstances lend support to the testimony of these witnesses for appellees and tend to discredit her testimony. Our consideration of the entire record satisfies us that the material allegations of the petition upon that issue have been established by evidence which is clear, satisfactory and convincing.

■ III. Appellants pleaded the oral contract between Lydia E. Cline and H. A. Cline involved rights in the real estate of Lydia E. Cline and was void under the Statute of Frauds, section 622.32, Code of Iowa, 1954 (1958). They present this proposition upon appeal. The record shows H. A. Cline performed his part of the contract immediately, by dismissing his action, and it clearly appears this dismissal was referable exclusively to the oral and written phase of the family settlement agreement. Hence, the Statute of Frauds is not here applicable. Hatcher v. Sawyer, 243 Iowa 858, 864, 865, 869, 870, 52 N.W.2d 490, and citations; Elder v. Brown, 203 Iowa 1124, 1131, 212 N.W. 147; Peddicord v. Peddicord, 242 Iowa 555, 559, 560, 47 N.W.2d 264.

■ IV. Some years after 1944 Lydia E. Cline took by devise approximately $30,000. Apparently the major part of the $27,000 delivered to her temporary administrator by the guardian of her property came from this source. Appellants contend the family settlement agreement applied only to the estate possessed by her when it was made. We find no basis for this contention. Of course, her will would speak as of the time of her death and neither that time nor the amount of her estate could be known in 1944. Any increase or decrease in her estate, not in violation of the terms of the family settlement agreement, would not affect that agreement.

■ V. W. G. Maddy, guardian of the property of Lydia E. Cline, was present in court during the negotiations leading to the execution of the written contract and the making of the oral contract. Appellants contend the oral contract is void because it was not formally approved by the guardianship court. The guardian had been appointed for Lydia Cline's property only, under what is now Code section 670.5, upon her own application. There was no adjudication she was not of sound mind on October 18, 1944, and for some years thereafter, nor was there any such evidence or contention in the trial. Hence,

it does not appear she was incompetent to make a will or testamentary instrument or that any testamentary agreement made by her would be void unless formally approved by the court.

Other contentions of appellants have been considered and determined to be insufficient to warrant the reversal or modification of the judgment. The case was carefully briefed by counsel on each side and the various legal propositions were well presented by them. However, appellants were overwhelmed by the facts shown in the record.

The judgment of the district court is affirmed.—Affirmed.

All JUSTICES concur.