IN RE GUARDIANSHIP OF PROPERTY OF MARGARET STARK, an aged person.

MARGARET STARK, petitioner-appellant, v. WRIGHT COUNTY STATE BANK, guardian, defendant-appellee.

No. 50814.

(Reported in 118 N.W.2d 537)

DECEMBER 11, 1962.

M. H. Morrissey, of Clarion, for appellant.

R. Ralph Austin, of Clarion, for appellee.

GARFIELD, C. J.—Margaret Stark, age 67 at time of trial in April 1962, filed her petition in probate under section 670.11, Code, 1962, to terminate a voluntary guardianship of her property. Following trial to the court the petition was dismissed. The ward has appealed. We affirm the decision.

On June 15, 1961, the Wright County State Bank was appointed guardian of Mrs. Stark's property upon her own application filed under section 670.5. This petition to terminate the guardianship was filed March 16, 1962. It alleges the ward was in possession of her mental faculties, capable of carrying on her

business affairs and a guardian was unnecessary. The guardian answered that the guardianship should be continued. The trial court found the ward was of sound mind but was unable to manage her affairs in a rational manner.

Section 670.5, Codes, 1958, 1962, provides any person, other than a mental retardate or lunatic, may, upon his own application, have a guardian appointed for his person or property, or both, if in the opinion of the court or judge the appointment would inure to the best interest of the applicant.

The ward's application or the order appointing the guardian under 670.5 raises no presumption, or constitutes no adjudication, she was mentally incompetent. In re Estate of Springer, 252 Iowa 1220, 1233, 110 N.W.2d 380, 388; In re Estate of Cline, 250 Iowa 265, 274, 93 N.W.2d 708, 713; Olsson v. Pierson, 237 Iowa 1342, 1347, 25 N.W.2d 357, 360.

Section 670.11, under which the petition to terminate was filed, states that at any time not less than six months after the appointment of such guardian the ward may petition for termination of the guardianship by alleging he is no longer a proper subject thereof.

Trial of an issue raised by a petition to terminate and the guardian's answer thereto is to the court unless a jury is demanded (section 670.13).

Under section 670.11 it was the ward's burden to prove she was no longer a proper subject of guardianship. In re Guardianship of Bender, infra; Perry v. Roberts, 206 Iowa 303, 307, 220 N.W. 85; Article by Jack W. Peters, 45 Iowa Law Review 336, 351. Section 670.5 indicates a person under voluntary guardianship is a proper subject thereof if it inures to the best interest of such person.

The trial court must be accorded a large discretion in a matter of this kind. In re Guardianship of Hawk, 227 Iowa 232, 239, 288 N.W. 114, and citations. The court's decision in this probate matter has the effect of a jury verdict in a law action and will be upheld if supported by substantial evidence. Our review is not de novo. In re Guardianship of Bender, 248 Iowa 531, 534, 81 N.W.2d 650, 651, 652, and citations; Olson v. Olson, 242 Iowa 192, 212, 213, 46 N.W.2d 1, 12. We will say,

however, we would reach the same conclusion the trial court did if our review were de novo.

We will refer to testimony we think supports the holding the ward was, at the time of trial, a proper subject of guardianship.

Although the evidence indicates and the trial court found Mrs. Stark was then mentally competent, she still suffered from a broken hip which required her to use either a "four-legged walker" or crutches. She definitely needed assistance because of this disability.

She suffered a heart attack June 16, 1961, while in the hospital. Mrs. Stark's memory for business matters was not good at the time of trial. A witness called by the ward testified, "Mrs. Stark has days of depression, probably due to her not being physically strong enough to get out and do the things she was accustomed to do but she is certainly mentally competent."

The ward formerly owned a valuable 240-acre farm in Wright County. In 1940 it was mortgaged for $12,000. In 1954 the mortgage was increased to $19,000. In September 1959 the mortgage was increased to $29,000. The farm was sold in 1958 for $425 an acre—a total price of $102,000. The purchaser assumed the mortgage and Mrs. Stark took a second mortgage for $13,500. She received in cash from the purchaser in January 1961, $18,168. She had previously received $32,000 cash.

At the time of trial on the petition to terminate the guardianship its total assets were slightly less than $23,000, including the second mortgage on the farm and a balance of $9700 due on a sale contract. For a period of many years prior to the appointment of the guardian the ward's property and money disappeared rapidly. Mrs. Stark herself was thrifty and modest in her wants. But she has a son Tom who has been and is an alcoholic and a serious financial drain upon his mother. She appears to be unable to resist the son's frequent requests for financial help. And the evidence warrants the finding her principal reason for this action was the hope she would be free to help her son financially without restraint.

Mrs. Stark gave her son and his wife a home which cost $22,000. Tom's wife procured a divorce from him and was

awarded this home. With the proceeds of one of the mortgages on her farm, the ward purchased Tom's farming equipment. She paid $5000 for an automobile for Tom's wife. She clothed his four boys and gave them $40,000. She put more than $18,000 into a contract for Tom to buy a skating rink, about nine acres of land, a boathouse and icehouse at a small lake in Wright County. As long as she could do so Mrs. Stark paid the child support payments required of Tom by the divorce decree. She also paid costs of the divorce.

Tom has been treated for alcoholism at a state institution two or three times and at several other places. He still drinks too much. At the time of trial he was the victim of nervous spasms and unable to work. His personal bank account was frequently overdrawn and he had borrowed all he could on his life insurance. During a period of a few months prior to the guardianship Tom wrote checks to various taverns which totaled over $1150 on a joint bank account his mother established. The bulk of the checks against this account were drawn by Tom. The conclusion is warranted that much of the money his mother gave him was spent for liquor. Mrs. Stark several times overdrew her personal bank account during pendency of the guardianship. The guardian seems to have supplied the ward's needs and dealt with her understandingly and with no selfish or improper motive.

Further reference to the evidence seems unnecessary. Enough has been set out to show there is substantial evidence that termination of the guardianship now would not be to the ward's best interest. Due to her generosity it would probably result in dissipation by Tom of more of her assets than if the guardianship is continued. And Mrs. Stark might well be reduced to indigence sooner than otherwise.

A suggestion in the ward's brief is an indication of the weakness in her case: "If it is thought that the threat of Tom's undue influence in the future constitutes an ever present danger then let the guardianship be terminated on condition all revenue and checks go through the Wright County State Bank [the guardian]." This would be to change a legal guardianship into what may be called a de facto one.

In support of our decision see In re Guardianship of Bender, 248 Iowa 531, 81 N.W.2d 650; In re Guardianship of Hawk, 227 Iowa 232, 288 N.W. 114; Perry v. Roberts, 206 Iowa 303, 308, 220 N.W. 85, all supra; Haworth v. Stanley (Iowa), 200 N.W. 410, 411.

Several of our decisions in proceedings of this kind point out they are for the benefit of the ward, rather than antagonistic to him. "* * * the real object and purpose of the guardianship is to preserve and conserve the ward's property for his own use, as distinguished from the benefit of others. [Citations] * * * the ultimate goal to be reached is appellant's protection, care and well-being. Conservation of his estate is for that object, and none other." Perry v. Roberts, supra.

This from Haworth v. Stanley, supra, is applicable here: "The evidence tended to show that appellant is perhaps not now insane, but the court found his best interests would be subserved by continuing the guardianship for a while at least. * * * While we recognize the right of every person to conduct his own business and to manage his private affairs, nevertheless a guardianship should not be terminated when it appears * * * it will be detrimental to the welfare of the ward * * *." In re Guardianship of Hawk, supra, 227 Iowa 232, 240, 241, 288 N.W. 114, repeats with approval the last sentence of this quotation.

Nothing herein conflicts with anything in Miller v. Paulson, 185 Iowa 218, 169 N.W. 203, or Emerick v. Emerick, 83 Iowa 411, 49 N.W. 1017, 13 L. R. A. 757, cited by the ward. We do not consider them in point.—Affirmed.

All JUSTICES concur.