Gladys SUPLEE, Appellant,

v.

Elmer E. STONEBRAKER, Ward, and Frances Kay Mennes, Conservator and Appellee.

No. 54751.

Supreme Court of Iowa.

March 16, 1972.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

John P. Roehrick, Des Moines, and J. R. Larson, Atlantic, for appellant.

Dale D. Levis, Audubon, for appellee.

REYNOLDSON, Justice.

This is an appeal from district court order terminating a conservatorship. We reverse and remand.

On March 25, 1968 Stonebraker filed a voluntary petition for appointment of conservator, reciting his inability to manage his property because of his age (76), and requesting appointment of his granddaughter, Frances Kay Mennes. This nominee was routinely appointed. Her inventory itemized a time certificate of deposit, $5000; checking account, $3018.31; and the balance remaining on farm contract, $45,000; a total of $53,018.31.

Nothing further was filed in the conservatorship until December 3, 1969, when an application was filed by Gladys Suplee, the ward's daughter. It recited her relationship as ward's only child, and alleged the ward had left his home in Exira and was staying with conservator at various locations in North Dakota and Montana. Application requested conservator be ordered to file her first report and accounting.

Pursuant to order entered, conservator on January 16, 1970 filed a "First Annual Report and Accounting" purporting to itemize receipts and disbursements. The daughter's objections, filed three days later, raised a number of accounting questions, some of which related to expenditures in even one-hundred dollar increments, unidentified disbursements, the absence of cancelled checks or vouchers, and the total expenditure of approximately $16,000 without court order. She prayed for appointment of guardian ad litem to represent the ward.

Probate court fixed time of hearing on report and appointed an attorney from Exira as guardian ad litem. His report noted a brief interview with the ward who "appeared to be in fairly good physical and mental health for a man of his years." This interview was in conservator's presence. Reporting further, guardian ad litem indicated the ward and his wife had been frugal. Relatives and friends interviewed thought he should have had more assets than were disclosed by conservator's inventory. (A 1950 mortgage in the initial sum of $11,000 had been paid off in 1961; in 1962 he had sold other farm land for $28,000; he had a farm sale just prior to the opening of the conservatorship.) The guardian ad litem recommended examination of conservator to determine unlisted assets.

Specific objections were raised by guardian ad litem because no vehicles were on conservator's inventory although conservator had made expenditures for gasoline and licenses for a car and a pickup. It was alleged conservator's report showed $1700 in improvements on an Exira lot belonging to conservator and her husband. Further objection was made because $1000 was disbursed for down payment on a North Dakota home owned by conservator and her husband. Unusual expenditures in round figures were noted as was the absence of cancelled checks or vouchers. Other objections were similarly pertinent.

In what was apparently an ex parte order dated March 2, 1970, trial court overruled some objections but as to others ordered conservator to make further explanation and to file her cancelled checks and bank statements.

Conservator never complied with this order. Instead, there was filed an instrument obviously drafted by an attorney, executed by the *ward*, and captioned "Statement Pursuant to Court Order of March 2, 1970." This statement alleged ward's ownership of an automobile and that "* * * I no longer own any other motor vehicles." Expenditures for Exira lot improvements were asserted to be for his benefit in order to utilize it as a mobile home location. It was alleged he intended to bequeath the conservator a certain portion of his estate and that he had given her gifts, including $1000 paid on the North Dakota home. The "Statement" asserted the ward waived all accounting and was competent to manage his affairs.

On June 5, 1970, trial court approved the first report and accounting of conservator. There was no notice to plaintiff daughter and no record indication of appearance by any interested party or guardian ad litem. Ten days later, plaintiff, on behalf of her father as next friend, filed motion to set aside this order and grant a new trial. This motion was overruled.

"Application for Dismissal of Conservator and Bond Discharged," executed by the ward, was filed June 30, 1970. The application alleged ward's capability to manage his own property. It was asserted he had by will left practically all his property to the conservator and he was "being well cared for by her and her husband." He again waived accounting and alleged change of residence to North Dakota.

On the date it was filed, the petition came on for hearing. The guardian ad litem, paid the sum of $50 for past services by prior order, did not appear. The ward appeared, as did attorney for conservator

and plaintiff's attorney, Mr. Larson. The following record was made in chambers:

"MR. LARSON: Let the record show that I appear in this matter only for the purpose of submitting the motion for a new trial filed by Gladys Suplee, and said motion having been overruled, for no other purpose."

"THE COURT: Thereupon the Court and counsel for the ward proceed to a hearing on the ward's application. All right, I am ready to proceed."

The "counsel for the ward" was conservator's designated attorney of record.

There followed an interrogation of the ward by counsel and court. Conservator was examined by her attorney. All this was without participation by plaintiff's counsel or a guardian ad litem. The ward's testimony, set out in transcript form, discloses his age as 79. His thinking processes were obviously slow; in many instances his memory for recent and ancient events was non-existent. Typical of his confusion is this sequence of testimony:

"Q. You live in North Dakota, isn't that right? A. Yeah.

"Q. How does that come about? Tell the Court how that happened? A. Well, I suppose I have my farm there."

The ward owned no farm in North Dakota. His last remaining Iowa farm had been sold.

The evidence developed conservator had spent most of her childhood in the ward's home. At time of trial the latter was being cared for by conservator and her husband. Responding to court's questions, Stonebraker testified he intended to leave his property to conservator and her children. Testimony further indicated plaintiff, a resident of Colorado, had little contact with the ward. Both ward and conservator testified they intended to continue living outside Iowa.

After hearing the evidence probate court stated:

"* * * the Court is satisfied beyond any doubt that his interests will be best served by terminating the guardianship [sic], and the record is ample to sustain the conclusion that his granddaughter and his granddaughter's children are the only family he has, that he can really call close to him, and they are the natural object of his bounty and whatever he has done for them or expects to do in the future is his own business, and I now sign the order terminating the guardianship."

The order of termination included a finding of the ward's competency. Plaintiff's second motion for new trial was overruled.

Appellant's brief is directed to the issue of the conservatorship termination. Appellee's brief is responsive. No questions of jurisdiction or standing are raised.

I. This appeal comes before the court as a case in equity. Section 633.33, The Code. Our review is de novo. Rule 334, Rules of Civil Procedure.

This proceeding was grounded on § 633.675, The Code, which relevantly provides:

"633.675 *Cause for termination.* A * * * conservatorship shall terminate, upon the occurrence of any of the following circumstances:

*      *      *      *      *      *

3. A determination by the court that the ward is competent and capable of managing his property and affairs, and that the continuance of the * * * conservatorship would not be in his best interests."

The ward may petition court for such termination at any time not less than six months after conservator's appointment. Section 633.679, The Code.

This is the first case to reach this court involving the termination of a conservator-

ship (guardian of the property under the prior law) since the effective date of our probate code (chapter 633) in 1964. Nothing in this law dilutes the basic concept that the court is in effect the superior conservator, while the conservator himself is deemed to be an officer of the court. See 39 Am.Jur.2d, Guardian and Ward § 1, p. 9. It is through court appointment the conservator is directed to take possession of all real and personal property of the ward (§ 633.640). He is charged with protecting and preserving such property and properly accounting for it (§ 633.641). After the appointment the ward cannot dispose of property except by will, and then only if he has the requisite testamentary capacity (§ 633.637). All contracts, transfers and gifts made by the ward after filing of the petition for conservatorship are presumed fraudulent (§ 633.638).

In this case we cannot divorce the petition to terminate, and the favorable ruling on it, from conservator's derelictions demonstrated by the record, which should have red-flagged the probate court to proceed with caution. There is more than an indication the petition was motivated by the ward's concern for the conservator, who not only failed to adequately account but may have been unable to do so.

■ Still more troublesome is the unsatisfactory record on the termination hearing. The inexplicable failure of plaintiff's counsel to participate, coupled with probate court's failure to appoint a guardian ad litem, insured lack of meaningful representation of the ward's interests. The ward had the burden of proving all three essentials to the termination: 1) his competency, 2) his capability of managing his property and affairs, and 3) that continuation of the conservatorship would not be in his best interests. Section 633.675(3). The last cited statute is in substantial conformance with our case law prior to its enactment. Before that date we held termination of a guardianship was properly denied where guidance and assistance by others was necessary for the care and admin-

istration of the ward's business and property. In re Guardianship of Stark, 254 Iowa 598, 118 N.W.2d 537 (1962); In re Bender's Guardianship, 248 Iowa 531, 81 N.W. 2d 650 (1957). In a de novo review this record is insufficient for us to find the ward capable of managing his business affairs.

In *Stark* we concluded the ward wanted the guardianship closed so she could more freely financially assist an alcoholic son. What we there said (254 Iowa at 603, 118 N.W.2d at 539) is applicable here:

"Several of our decisions in proceedings of this kind point out they are for the benefit of the ward, rather than antagonistic to him. ' * * * the real object and purpose of the guardianship is to preserve and conserve the ward's property for his own use, as distinguished from the benefit of others. [Citations.] * * * the ultimate goal to be reached is appellant's protection, care and wellbeing. Conservation of his estate is for that object, and none other.' Perry v. Roberts, supra."

Perry v. Roberts is found at 206 Iowa 303, 220 N.W. 85 (1928).

■ Where, as here, a ward, whose aged or physical condition was the initial basis for appointment of conservator, petitions for termination of conservatorship and is not represented by counsel or is represented only by conservator's counsel, his interests should be safeguarded by appointment of a guardian ad litem. Such representation by guardian ad litem should be more than filing a perfunctory answer. There should be meaningful preparation for, and participation in, the hearing by the guardian ad litem; and if termination is ordered, in the accounting procedure unless the county of jurisdiction has a fulltime referee in probate. Reasonable compensation should be allowed for such services. Only through these measures may the probate court be assured that it, and its officer, the conservator placed in posses-

sion of the ward's property, have legally discharged such trust.

■■ II. Touching upon the matter of accounting, which may be the root problem here, it is true that in a *decedent's* estate interested parties are permitted by statute to waive accounting by the *administrator* or *executor* [§ 633.477(9)]. No comparable statute avoids a *conservator's* duty to account. While the court, for good grounds shown, may relieve the obligation to report annually [§ 633.670(1)], the provision for final accounting is mandatory [§ 633.670(4)]. Pursuant to § 633.677, upon termination of a *conservatorship* the *conservator* must "render a full and complete accounting to the ward or his personal representative *and to the court.*" (emphasis added). There is no authority for the court to waive the accounting to be made to it. Strict final accounting, with notice to the former ward and veterans administration, was mandatory under our old guardianship statutes relating to veterans administration funds. Section 672.21, Code, 1962. Section 672.21 was not reenacted in Division XIII, Part 6 ("Conservatorships Involving Veterans Administration"), of the present probate code. It was eliminated from that part because "* * * section 672.21 (1962 Code) is covered by sections 633.676 through 633.683 of this Code." Bar Committee Comment, 47 I.C.A., p. 470. Obviously it was intended to extend the mandatory final accounting provisions of § 672.21 of the 1962 and prior codes to *all* conservatorships through the provisions of § 633.677 of the present code. Nor do the wishes of a competent ward excuse performance of statutory duties by the fiduciary, including the obligation to account, report, and secure court approval in major matters. In re Anderson's Guardianship, 247 Iowa 1292, 78 N.W.2d 788 (1956).

The order of probate court terminating this conservatorship is set aside. This matter is remanded for new hearing upon the petition to terminate. In conformance with this opinion the probate court shall appoint a guardian ad litem to represent the ward's interests.

■ Notice of hearing on said petition shall also be given plaintiff and her counsel. By so ruling we do not hold the child of a ward is in all situations an interested party to be given notice in conservatorship hearings. We do hold that where, as here, such child reasonably intervenes in such conservatorship in the interest of the ward she may be permitted to participate. When the assets of the ward are exhausted plaintiff may be liable for his support. This liability is imposed in Iowa and in at least thirty-three other states. Sections 252.5, 252A.2(4), 249.25, The Code; 59 Am.Jur.2d, Parent and Child § 105, p. 204; 70 C.J.S. Paupers § 60e(3), p. 106; 9A Uniform State Laws Anno. [Pocket Part, p. 11 (1967)].

■ If in following these guidelines the probate court shall order this conservatorship terminated, the conservator shall be required to make the full and complete accounting provided by the probate code. As mandated by § 633.678, all assets of the conservatorship shall be delivered to the ward, under the direction of the court.

In the event the conservatorship is not terminated, probate court should give careful consideration to conservator's nonresidence, which constitutes grounds for removal under § 633.65, The Code.

Reversed and remanded with instructions.

All Justices concur.